# Herler *v.* Pierce, Appellant.

*Slander—Innuendo—Meaning of words—Evidence—Case for jury—Damages—Special damages.*

1. In an action for slander plaintiff charged that defendant uttered these defamatory words: "'H. buys and sells No. 2 hams,' thereby meaning and intending to charge that the said H. sold hams that were inferior in quality, sour and unfit to eat, unmarketable, and which have to be sold contrary to the meat inspection law; and the said term No. 2 hams is generally so understood among the trade." The evidence as to the meaning attributed to No. 2 hams by the innuendo was conflicting. *Held,* that the question of the meaning of the word was for the jury.

2. In such a case where it is alleged that the words were spoken of one engaged in the meat business, and in the hearing of a dealer in meats, it is peculiarly for the jury to determine if they had the meaning peculiar to the meat trade ascribed to them in the innuendo.

3. Parol evidence is always receivable to define and explain words which are purely technical and local, that is, which are not of universal use, but are familiarly known and employed either in a particular district, or in a particular science or trade, among those who use them.

4. Where words are spoken with special reference to a particular trade or business, and charge an indictable offense involving moral

turpitude, and punishable by fine and imprisonment, the averment of special damage is not essential to the maintenance of the action, and the recovery of general damages.

Argued April 10, 1912.   Appeal, No. 36, April T., 1912, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1907, No. 615, on verdict for plaintiff in case of Charles Herler v. James F. Pierce.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Trespass for slander.

At the trial the jury returned a verdict for plaintiff for $500.

On a rule for a new trial FORD, J., filed the following opinion:

This is an action of slander brought by Charles Herler, the plaintiff, against James F. Pierce, the defendant.

James F. Pierce was manager and agent of Armour & Company, a corporation engaged in the wholesale meat and provision business, and as such agent sold the products of Armour & Company at wholesale to dealers engaged in the meat trade.   The plaintiff was engaged in the wholesale provision business, largely purchasing and selling hams.   For some time prior to June or July, 1907, he had purchased goods from the defendant.   In June or July he ceased to be a customer of the defendant and purchased elsewhere.

The plaintiff's statement alleges "that on or about August 1 or 2, 1907, the defendant uttered these defamatory words, 'Charles Herler buys and sells No. 2 hams,' thereby meaning and purporting to charge that the said Charles Herler sold hams inferior in quality, unsound, unfit to eat, unmarketable, and which had to be sold contrary to the meat inspection laws, and the said term No. 2 hams is so generally understood among the trade."

The verdict of the jury was for the plaintiff, and de-

fendant moved the court for a new trial, assigning as reasons:

1. The court erred in refusing the defendant's points.

2. The court erred in admitting and refusing to strike out the testimony of Kimmich, Seiling, Kuhn and others, who testified as to their opinion of what was a No. 2 ham.

3. The verdict is against the weight of the evidence. We will consider the reasons in order.

The point presented by defendant and refused was a request for binding instructions, the defendant contending that the words laid in the declaration were spoken of a private person and are not actionable because they do not impute an indictable offense of an infamous character nor subject the plaintiff to an infamous or disgraceful punishment, and that the words spoken as laid in the declaration are not actionable.

It is doubtful whether the words alleged, taken in their natural sense, are actionable. Charles Herler, the plaintiff, was and for a number of years had been engaged in the business of buying and selling meats and hams at wholesale. The innuendo in plaintiff's statement designates the sense in which the words were used as meaning that he, plaintiff, sold hams inferior in quality, unsound and unfit to eat, unmarketable and sold contrary to the meat inspection laws. Words relating merely to the quality of articles sold, though false and malicious, are not actionable without special damages, Dooling v. Budget Publishing Co., 144 Mass. 258 (10 N. E. Repr. 809), but "Any words are libelous which in any manner are prejudicial to another in the way of his employment or trade:" Odgers on Libel and Slander, 19. This principle was cited with approval by the court in McIntyre v. Weinert, 195 Pa. 52, as was also the principle laid down in Odgers on Libel and Slander and cited in Price v. Conway, 134 Pa. 340, that where words are spoken of another in the way of his profession or trade, special damages need not be averred in the statement: Holland v. Flick, 212 Pa. 201.

1. The Act of May 25, 1907, P. L. 234, prohibits the sale of unsound, unhealthful or unwholesome meat or meat products for use as human food, and provides that if any person shall sell or expose for sale any meat or meat product which is diseased, unsound, unhealthful, unwholesome, or otherwise unfit for human food, knowing that such meat or meat product is intended for human consumption, he shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding $500, or by imprisonment not exceeding one year, or by both. To charge a person engaged in the meat business with selling meats unsound, unfit to eat and unmarketable impairs his credit and repute for honesty in the conduct of his business and imputes to him a violation of the act of 1907, and is actionable. 25 Cyc. 287, citing Brooks v. Harison, 91 N. Y. 83, and Geary v. Bennett, 53 Wis. 444 (10 N. W. Repr. 602).

2. It is not controverted that in the meat and provision business or trade hams are recognized as of two grades, No. 1 and No. 2, No. 1 being of good quality, wholesome and sold for use as food. Plaintiff contended that a slightly bruised ham was sold as "No. 1, bruised," and was fit for and sold as a food, that a No. 2 ham is unsound and unfit for food and its sale prohibited by law. The defendant contended that a No. 2 ham contained slight blemishes or defects, but the defects or blemishes being removed the meat was sweet, wholesome and was marketable as food. Each of the witnesses called by the plaintiff was engaged in the purchase and sale of meats and meat products for a number of years; Mr. Kimmich for thirty-two years, Mr. Seiling for thirty years, and Mr. Kuhn for thirty years. The competency of the witnesses to testify to the grade and quality of hams sold as food on the market was not questioned, but the defendant urges that the words "No. 2 hams" are not equivocal nor ambiguous, and their construction is for the court. As to what constitutes defamation of a person in his trade, business or profession, each case must stand on its own facts. If the

words alleged to have been spoken have a popular meaning, they are to be taken in a common and normal sense and it is not competent to prove by witnesses the special averment of the innuendo, but where the words have a technical meaning or are used in a trade or calling as descriptive of a particular quality, grade or condition of goods produced or manufactured and placed on the market, it is competent in the absence of a popular and well-known interpretation to show by witnesses the meaning of the words in the trade. "The judge (or the jury) will not resort to outside aid if the question is merely one of ordinary usage, which will be as familiar to him (or to them) as to anyone; while if it is one of the usage of a special trade or locality, or if for any other reason aid is necessary, it will be sought:" Windgrown on Evidence, sec. 1953. Here, the words are alleged to have been spoken of one engaged in the meat business in the hearing of a dealer in meats and to have a meaning or usage peculiar to that trade. The court could not determine as a matter of law that the words should be interpreted as synonymous with diseased meats, nor that they imputed a second or inferior grade marketable and fit for food.

3. It was not disputed that hams slightly spotted on the skin or somewhat torn are sold on the market and when the blemishes are removed the meat is wholesome and fit for food. The plaintiff claimed that such hams are known as "No. 1, skin bruised." The defendant, that they were known and recognized in the trade as "No. 2 hams." The jury was advised of the respective claims of the plaintiff and defendant and instructed if "No. 2 hams were recognized in the meat trade as marketable and sold and permitted to be sold as food, then the fact, if it be a fact, that they were in quality inferior to No. 1, would not entitle the plaintiff to recover, and if you find that the words spoken meant that the plaintiff purchased and sold No. 2 hams of the grade and quality inferior to No. 1 but salable, fit for food and sold on the market, then the plaintiff was not charged with a violation of the

act of assembly and he is not entitled to recover." The testimony was conflicting, and though we might have reached a different conclusion, yet there was ample evidence to sustain the verdict and we are not persuaded that it should be disturbed.

*Error assigned* was in refusing binding instructions for defendant.

*Levi Bird Duff*, with him *L. B. D. Reese*, for appellant.— The words, "Charles Herler buys and sells No. 2 hams," are not equivocal or ambiguous and are not actionable per se. Their construction is for the court: Pitts., Allegheny & Manchester Pass. Ry. Co. v. McCurdy, 114 Pa. 554; Rangler v. Hummel, 37 Pa. 130.

An innuendo may not introduce new matter or enlarge the natural meaning of words. It must not put upon defendant's words a construction which they will not bear: Lukehart v. Byerly, 53 Pa. 418; Price v. Conway, 134 Pa. 340.

*Hermann L. Grote*, with him *Frederick C. Grote*, for appellee.—Where the words laid are of doubtful import or are susceptible of a double meaning, an innuendo is used to designate the sense in which they are intended: Rue v. Mitchell, 2 Dall. 58; Bruce v. Reed, 104 Pa. 408; Barger v. Barger, 18 Pa. 489; Gosling v. Morgan, 32 Pa. 273; Walter v. Erdman, 4 Pa. Superior Ct. 348.

The contention of the other side, that the court should have taken the case from the jury, and should have instructed them, as a matter of law, that the words were not actionable, is overthrown by the defendant's chief case, relied upon by him, namely: Pitts., Allegheny & Manchester Pass. Ry. Co. v. McCurdy, 114 Pa. 554.

Words injuriously affecting a person in his trade or occupation are slanderous per se: Doling v. Pub. Co., 144 Mass. 258; Holland v. Flick, 212 Pa. 201; McIntyre v. Weinert, 195 Pa. 52; Leitz v. Hohman, 16 Pa. Superior

Ct. 276; Young v. Kuhn, 71 Texas, 645 (9 S. W. Repr. 860).

Words imputing the commission of a crime are slanderous per se: Davis v. Carey, 141 Pa. 314; Weaver v. Phillips, 231 Pa. 325.

There need be neither allegation nor proof of special damage in the case at bar: Holland v. Flick, 212 Pa. 201; Price v. Conway, 134 Pa. 340; Meas v. Johnson, 185 Pa. 12; Leitz v. Hohman, 16 Pa. Superior Ct. 276.

OPINION BY RICE, P. J., July 18, 1912:

The plaintiff's statement alleged that the defendant uttered these defamatory words: "'Charles Herler buys and sells No. 2 hams' thereby meaning and intending to charge that the said Charles Herler sold hams that were inferior in quality, sour and unfit to eat, unmarketable, and which have to be sold contrary to the meat inspection law; and said term No. 2 hams is generally so understood among the trade." Interpreting the verdict in the light of the instructions given to the jury, it implies a finding that the defendant uttered the alleged slanderous words, and that he intended them to have, and those hearing would understand and interpret them as having, the meaning ascribed to them by the innuendo. Although the evidence was conflicting, there was enough, if the jury believed the plaintiff's witnesses, to sustain a finding that in the trade the terms used have the meaning ascribed to them. But it is argued that the alleged slanderous words are not equivocal or ambiguous, and are not actionable per se, and that an innuendo may not introduce new matter or enlarge the natural meaning of words. This statement of the scope of an innuendo means that it must not put upon defendant's words a construction which they will not bear; but it does not mean that, if the words are susceptible of a double meaning, they must be taken in the milder sense. "If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the judge at the trial will stop

the case. If, however, the words are capable of the meaning ascribed to them, however improbable it may appear that such was the meaning conveyed, it must be left to the jury to say whether or no they were in fact so understood:" Odgers on Libel and Slander, *p. 100. In the same connection, the learned author says that, where words prima facie are not actionable an innuendo is essential to the action; it is necessary to bring out the latent injurious meaning of the defendant's words. It is to be borne in mind that the words are alleged to have been spoken of one engaged in the meat business, in the hearing of a dealer in meats, and, if they have the meaning peculiar to that trade ascribed to them in the innuendo, it cannot be doubted that it was competent for the plaintiff to prove that fact, and that it was the province of the jury to determine whether that was the meaning conveyed, having proper regard to the time, place and circumstances under which they were uttered. Parol evidence is always receivable to define and explain words which are purely technical or local, that is, which are not of universal use, but are familiarly known and employed, either in a particular district, or in a particular science or trade, among those who use them: 1 Greenl. on Ev., sec. 295; Newell on Libel and Slander, p. 277. Wherever the defendant's words are capable both of a harmless and an injurious meaning, it will be a question for the jury to decide which meaning the hearers or readers would, on the occasion in question, have reasonably given to them: Odgers on Libel and Slander, *p. 112. Viewing the testimony in the light of these elementary principles, we think the court committed no error in submitting the questions, first, of the utterance of the words, and, second, of the meaning conveyed by them, to the jury. The manner in which this was done is not questioned by the assignment of error.

It is argued that binding direction should have been given for the defendant, for the additional reason that no special damage was alleged or proved. But, as the words

were spoken with special reference to the particular trade or business in which the plaintiff was engaged, and as they also charge, as found by the jury, an indictable offense involving moral turpitude and punishable by fine and imprisonment, the averment of special damage was not essential to the maintenance of the action and the recovery of general damages: Price v. Conway, 134 Pa. 340; Meas v. Johnson, 185 Pa. 12; Leitz v. Hohman, 16 Pa. Superior Ct. 276; Holland v. Flick, 212 Pa. 201.

We need not discuss the case further. For the reasons above suggested, taken in connection with what the learned trial judge has said in his clear and satisfactory opinion overruling the motion for a new trial, the judgment must be affirmed.

Judgment affirmed.