BROWN, APPELLANT, *v.* INDEPENDENT PUBLISHING CO., RESPONDENT.

(No. 3,300.)

(Submitted November 17, 1913. Decided January 9, 1914.)

[138 Pac. 258.]

*Libel—Defense—Pleading—Special Damages—When Publication Libelous Per Se—Innuendo—Construction of Language—Complaint—Insufficiency.*

Libel—Defense—Illegal Business—Wrestling.
1. Where an alleged libel is in respect to an unlawful business carried on by plaintiff, such as that pursued by a professional wrestler, contrary to the provisions of section 8576, Revised Codes, he cannot maintain the action for the purpose of recovering damages for injury to his business.

Same—Pleading—Special Damages.
2. If a publication is not libelous *per se,* damages are not recoverable unless they are alleged specially.

[As to what is an excessive verdict in an action for libel, see note in Ann. Cas. 1913B, 700.]

Same—Innuendo—Surplusage.
3. If a publication is not libelous *per se,* it cannot be made so by innuendo.

[As to evidence sufficient to support innuendo, see note in 53 Am. St. Rep. 698.]

Same—Construction of Language—Publication Libelous *per se.*
4. In determining whether language complained of is libelous *per se,* it must be considered in its relation to the entire article in which it appears; and to warrant the conclusion that it is of such character, the words must be susceptible of but one meaning, viz.: that from its publication pecuniary loss to plaintiff necessarily must, or presumably did, follow as its proximate consequence.

[Newspaper libel is the subject of a note in 15 Am. St. Rep. 333. As to what words are actionable *per se,* see note in 116 Am. St. Rep. 802.]

Same—Case at Bar—Complaint—Insufficiency.
5. *Held,* that the publication of an article containing the words: "S. [a professional wrestler] refused to pay room rent," was not libelous *per se;* hence, in the absence of an allegation specially pleading facts showing pecuniary loss because of the publication of such words, his complaint did not state a cause of action for libel.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by T. M. Brown, *alias* Tom Sontag, against the Independent Publishing Company, to recover damages on account

of certain libelous statements in its newspaper.   From a judg-
ment for defendant, plaintiff appeals.   Affirmed.

*Mr. E. A. Carleton,* for Appellant, submitted a brief and
argued the cause orally.

All that section·3602, Revised Codes, requires, and all that the
decisions under similar statutes hold is necessary, is that the
publication be false and unprivileged and that it results in in-
jury, in the manner pointed out in the statute, or that the false
and unprivileged publication "has a tendency to injure him
in his occupation." All these matters are alleged in the com-
plaint.   If a cause of action is not stated in this complaint, then
a newspaper, simply because it is a newspaper, can say anything
about anybody, no matter how false the publication may be or
how injurious.   The statute defines the law of libel of this state,
and so long as the pleader brings himself within its terms, the
court cannot properly sustain a demurrer to the complaint upon
the ground that a cause of action is not stated.   (*Lick* v. *Owen,*
47 Cal. 252; *Tonini* v. *Cevasco,* 114 Cal. 266, 46 Pac. 103; 18
Am. & Eng. Ency. of Law, 2d ed., 916; Newell on Defamation,
Slander and Libel, 2d ed., p. 92.)   If the publication imputes
a want or unwillingness to pay debts, it is libelous *per se.*
(25 Cyc. 258.)   Likewise it is libelous *per se* if it is false and has
a tendency to injure plaintiff's business.   (25 Cyc. 505.)   In
the case of *Muetze* v. *Tuteur,* 77 Wis. 236, 20 Am. St. Rep. 115,
9 L. R. A. 86, 46 N. W. 123, it was held that it was libelous
*per se* to send an envelope on which is printed the business card
of an association the purpose of which was stated to be "for col-
lecting bad debts."

*Messrs. Day & Mapes,* for Respondent, submitted a brief; *Mr.
E. C. Day* argued the cause orally.

Giving to the language of the article in question its natural
interpretation, the reader could only gain from this statement
the information that the wrestling match or exhibition given
at Deer Lodge was not a financial success, and that the wrestler

had left town without paying his room rent. A mere charge that a person, not a merchant or tradesman, has failed or refused to pay a bill, is not libelous *per se.* (*Nichols* v. *Daily Reporter Co.,* 30 Utah, 74, 116 Am. St. Rep. 796, 8 Ann. Cas. 841, 3 L. R. A. (n. s.) 339, 83 Pac. 573; *Denney* v. *Northwestern Credit Assn.,* 55 Wash. 331, 104 Pac. 769.) On the face of the pleadings, then, no cause of action is set forth, based upon words actionable *per se.*

The plaintiff, however, has attempted to cure this objection by his innuendo that the defendant meant by the statement "that the plaintiff had defrauded his landlord of his room rent." The purpose of an innuendo is to explain words the meaning of which is not apparent on the face of the article. It cannot add to or take from the interpretation which the ordinary reader would give to such words, unless the words were used in some special connection in which they would not be readily understood by the ordinary reader who had no knowledge of the circumstances giving rise to the special interpretation. In this case the words are used in their natural sense, and the innuendo can add nothing to them. Nor can it take away from them the effect of the explanatory words contained in the second paragraph of the article, to the effect that the receipts of the exhibition had not been sufficient to defray the expenses of what might be termed the expedition of the champion welterweight wrestler of Missoula and his company from Helena to Deer Lodge.

The pleader seeks to cure these defects in his complaint by pleading special damages. But his pleading of special damages is no more effective than his innuendo, for the reason that he alleges no facts from which the special damages are to arise. His allegations of injury to his business are as general in character, though oft repeated, as it is possible for them to be, and do not in any manner comply with the requirements of the rule which has been laid down by this court with reference to such allegations. (*Ledlie* v. *Wallen,* 17 Mont. 150, 42 Pac. 289.)

If, however, the plaintiff has been engaged in the business as alleged in his complaint, and has built up a reputation for the

management of such affairs, he has been engaged in an unlawful pursuit, for which he is punishable under the laws of the state. (Rev. Codes, sec. 8576.)   No words spoken of him in connection with this business can be held to be libelous, and the unlawful character of his business is a sufficient ground for denying him relief.   (*Johnson* v. *Simonton*, 43 Cal. 242.)

HON. ALBERT P. STARK, Judge of the Sixth Judicial District, sitting in place of MR. JUSTICE SANNER, disqualified, delivered the opinion of the court.

This is an action brought by the plaintiff against the defendant, publisher of the "Helena Daily Independent," to recover damages alleged to have been sustained by him on account of the publication in said newspaper of two alleged libels.

In the first of the two causes of action set out in the amended complaint the plaintiff alleges that at all times therein mentioned he was, and still is, commonly known and called by the name of "Tom Sontag," under which said name he advertises and does business, and that said name is his business and stage name; that the business of plaintiff was, and is, that of a professional wrestler; that he has been giving wrestling matches throughout the state of Montana and elsewhere, for the profit or money to be made for himself out of the same, and that he has devoted all of his time to such business; that in such wrestling matches and exhibitions he would wrestle and engage in wrestling contests for the rewards and profits that he might derive thereby; that in carrying on said business it was necessary to advertise, and the plaintiff did advertise, such matches and exhibitions extensively in the public press, and by means thereof he had become well and favorably known to the general public, and that his success in said business has been to a very great extent due to the good reputation which plaintiff has always borne as an honorable man, and his reputation for honest and square dealing with the public; that plaintiff has always borne a good name and reputation for honesty and square dealing among all people where he has stopped and with whom he has come in contact,

and that until the time of the publication of the article complained of has never been guilty of any base or immoral conduct and has never refused to pay his hotel bills, room rent or other bills. It is then alleged that on May 28, 1912, the defendant published in said newspaper the following article:

"Tom Sontag is Under Arrest.

"Word from Sheriff of Powell County Prompts Chief Flannery to Jail Wrestler.

"By request of Sheriff Joseph Neville, of Powell county, Tom Sontag [meaning the plaintiff], the welterweight champion wrestler of Missoula, who managed an athletic program in which he took part at the Family Theatre Saturday night, was arrested at noon yesterday by Policeman Fred Mundt. The charge is malicious mischief and according to deputy sheriff James Mullin who came over from Deer Lodge on No. 6 this morning to take the wrestler back, Sontag refused to pay room rent when he was there but a short time ago. On returning from Deer Lodge, Sontag, as well as those who accompanied him from Helena, said they had but a $13 house at Deer Lodge, and it is the opinion of many of the local fans that the wrestler merely ran short of funds."

The particular portion complained of and alleged to be libelous is the statement, "Sontag refused to pay room rent when he was there but a short time ago." By innuendo, it is alleged that by said statement the defendant meant, "that plaintiff had defrauded his landlord of his room rent." It is further alleged that by reason of said publication, which was false and malicious, plaintiff is greatly prejudiced, discredited and injured in his good name, fame, credit and reputation, and is held up and brought into and exposed to public infamy, disgrace, contempt, hatred and ridicule, and by means of the writing or publishing of said libel as aforesaid, the peace and happiness of the plaintiff has been greatly disturbed, and he has suffered anxiety and distress of mind on account thereof, and that his said business has been seriously interfered with, damaged and injured, and that his credit has been greatly injured in consequence thereof.

In the second cause of action the allegations are similar to those of the first, except that the publication complained of was made on May 29, 1912, and is an article apparently published at the instance of the plaintiff for the purpose of enabling him to deny the charge contained in the first publication, which he alleged to be untrue.

To this amended complaint the defendant filed a general demurrer, which was sustained by the Court. The plaintiff elected to stand upon his amended complaint, and judgment was thereupon rendered in favor of the defendant for its costs, from which judgment this appeal is prosecuted. The only question presented for consideration is whether the amended complaint states a cause of action.

In so far as the plaintiff seeks to show that the alleged libelous [1] publications had a tendency to injure him in his occupation, it is sufficient to say that under the provisions of section 8576, Revised Codes, any person who engages in, instigates, encourages or promotes as principal, aid, second, umpire, or otherwise, any wrestling match, is guilty of a misdemeanor, and that "where an alleged libel is only in respect to an unlawful business carried on by plaintiff, the action cannot be maintained. The illegality of the business is an answer to the complaint." (*Johnson* v. *Simonton*, 43 Cal. 242; 25 Cyc. 329.)

Eliminating from consideration, as mere surplusage, all that portion of the pleading in question relating to the business of the plaintiff and the alleged damage thereto, there is left in the first cause of action the published statement: "Sontag refused to pay room rent when he was there but a short time ago." [2, 3] By innuendo it is alleged that the defendant meant thereby that the plaintiff had defrauded his landlord of his room rent. If the language employed is not libelous *per se,* no cause of action is stated; for it is the general rule that unless the publication is libelous *per se,* special damages must be alleged (*Ledlie* v. *Wallen,* 17 Mont. 150, 42 Pac. 289), and there is not any allegation of special damages in this complaint. And the innuendo cannot change the character of the publication. If it is not libel-

ous *per se,* it cannot be made so by innuendo. (25 Cyc. 450.)
[4] In determining whether the language complained of is libelous *per se* it must be construed in its relation to the entire article in which it appears (*Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215; 25 Cyc. 357), and the entire printed statement must be viewed by the court as a stranger might look at it, without the aid of special knowledge possessed by the parties concerned. (*Denney* v. *Northwestern Credit Assn.,* 55 Wash. 331, 104 Pac. 769.)

In the early case of *Stone* v. *Cooper,* 2 Denio (N. Y.), 293, Chancellor Walsworth said that to constitute published matter concerning one libelous *per se,* "the nature of the charge itself must be such that the court can legally presume he has been degraded in the estimation of his acquaintances or of the public, or has suffered some other loss either in his property, character or business, or in his domestic or social relations, in consequence of the publication of such charge." This language has been cited with approval by courts and text-writers generally to the present day and constitutes as precise a test as any known to the law of libel. (*Tillson* v. *Robbins,* 68 Me. 295, 28 Am. Rep. 50; *Herringer* v. *Ingberg,* 91 Minn. 71, 97 N. W. 460; *Goldberger* v. *Philadelphia Grocer Pub. Co.,* 42 Fed. 42.)

In order for a court to legally presume that published words will expose the person at whom they are aimed to hatred, contempt, ridicule or obloquy, or cause him to be shunned or avoided, such words, as they are used, must be susceptible of but one meaning, and that the one which *proprio vigore* leads to the injurious consequences.

Having arrived at the conclusion that all references in the amended complaint to the plaintiff's business or occupation, as well as the innuendo pleaded, must be treated as mere surplusage, [5] we have left the published statement: "Sontag refused to pay room rent." The case then resolves itself into the simple proposition of whether the writing and publication of this statement concerning one who is not engaged in any legitimate business is such an accusation against his good name, fame and

reputation as will necessarily "expose him to hatred, contempt, ridicule or obloquy, or cause him to be shunned or avoided" (Rev. Codes, sec. 3602), to the extent that the court can say, as matter of law, that from its publication pecuniary loss to the plaintiff necessarily must, ·or presumably did, follow as its proximate consequence, and that therefore it would not be necessary for him to allege such damages in order to recover. The decided cases, a large number of which are cited in *Nicholas* v. *Daily Reporter Co.*, 30 Utah, 74, 116 Am. St. Rep. 796, 8 Ann. Cas. 841, 83 Pac. 573, clearly negative the proposition.

The article does not impute to the plaintiff an unwillingness to pay any just debt or obligation, but only a refusal to pay a particular charge made against him, and this he might properly do under any code of law or morals if the charge was excessive or had not been incurred. If the publication of this statement did, as a matter of fact, occasion pecuniary loss to the plaintiff, it was incumbent upon him to specially plead the facts showing such loss and damage, and, having failed to do so, the first count of the amended complaint does not state a cause of action. The same reasoning and conclusion will apply to the second cause of action.

From the foregoing it follows that the order of the trial court in sustaining the demurrer to the amended complaint was correct and should be affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.