## Martin v. White.

(Decided May 14, 1920.)

## Appeal from Gallatin Circuit Court.

1.  Libel and Slander—Accusing Woman of Fornication or Adultery. —It was not per se actionable at common law to orally accuse a woman of fornication or adultery, but this rule has been changed in this state by section one of the Kentucky Statutes.

2.  Libel and Slander—Words Slanderous Per Se.—Words orally spoken in order to be slanderous per se must clearly and unequivocally import the particular accusation, but this does not mean that they must expressly do so. If the only reasonable interpretation of which they are capable imports the accusation, it will be sufficient.

3.  Libel and Slander—Accusing Woman of Fornication or Adultery. —In an action for slander, under section 1 of the statutes, which makes it actionable per se to charge a female with fornication or adultery, it is not necessary that the charge be made in direct, specific language, but it is sufficient if the ordinary meaning of the entire words used would be calculated to impress the hearers with the belief that the speaker intended to charge unchastity.

4.  Libel and Slander—Adulterous Conduct Charged—Pleading.— Where the petition charged that defendant had maliciously and in the presence of others, said: "You often went to Doctor Duvall's office, pulled the blinds down and locked the door, and stayed for hours, and got the medicine you went for. You are a bitch and I can prove it"—held sufficient to prefer a charge of unchastity and adulterous conduct.

JAMES H. SETTLE for appellant.

R. B. BROWN and J. W. CAMMACK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The petition in this case charges that the defendant and appellee, Gill White, maliciously spoke, in the presence and hearing of Carrie Warren and others, of and concerning the plaintiff, the false and slanderous words: "You often went to Doctor Duvall's office, pulled the blinds down and locked the door, and stayed for hours, and got the medicine you went for. You are a bitch and I can prove it." The petition contained an innuendo that "the defendant intended to accuse and did thereby accuse the plaintiff of adultery, lack of chastity and moral turpitude, and intending thereby to defame the reputation and good moral character of the plaintiff."

The court sustained the demurrer filed to the petition and plaintiff declining to plead further, her petition was dismissed, and complaining of that judgment she prosecutes this appeal.

At the common law there were only five classes of cases in which slanderous words, orally spoken, were *per se* actionable. They are set out and discussed in the case of Williams v. Riddle, 145 Ky. 459. in which many authorities are referred, to, but we need not repeat those classifications here since at common law it was not *per se* slanderous to charge a female with adultery or fornication, as will be seen from the case just referred to and 25 Cyc. 317. The only reason assigned in the books for this harsh, strange and inexcusable condition of the common law is that the temporal courts did not have jurisdiction of the offenses of adultery and fornication, they being cognizable exclusively in the ecclesiastical courts. But enlightened jurisprudence has long since recognized the fact that there can be no more poisonous shaft aimed at the reputation of a woman than a false accusation concerning her chastity, and to remedy the defects in the common law, statutes in most states have been enacted, making such accusations *per se* slanderous, ours being section 1 of the Kentucky Statutes, which says:

"A charge of incest, fornication or adultery against a female shall be actionable; and in such cases the plaintiff shall not be held to allege or prove special damages."

See also Nicholson v. Rust, 21 Ky. L. R. 645.

But, notwithstanding the statute, it is still a question for the courts to determine under the general law of slander what words will constitute the charge of adultery or fornication, and the general rules for determining the sufficiency of the language to constitute the particular slander sued for apply in this case. As in other cases it is not necessary that the charge be made in direct, specific language so as to show affirmatively and beyond doubt what the speaker meant, but it is sufficient if the entire words employed, in their natural and ordinary meaning, were calculated to impress the hearers with the belief that the speaker intended to charge the particular slander involved, and that they so understood him. Thus in Cyc. *supra*, page 319, the text, speaking of the defamation here involved, says:

"It is not necessary in order to constitute actionable slander that the words should amount to a directly af-

firmative charge of fornication, adultery or unchastity; it is sufficient if the words were calculated to induce the hearers to suppose and understand that the person against whom they were uttered was guilty of unchastity." And in 17 R. C. L. 282, the text upon this subject is:

"As to the construction and meaning of words imputing want of chastity or the commission of a sexual offense, endless litigation has arisen owing to the fact that the words uttered are generally of an insinuating character or consist of provincial expressions. slang or words not found in dictionaries. As a rule the words complained of are to be taken and understood in' that sense which is most natural and obvious, and according to the ideas they are calculated to convey to those to whom they are addressed. It is not essential that the charge be made in direct terms; but it is sufficient if the words used are such as impute unchastity, adultery or fornication, and were so understood by those who heard them. In ascertaining the meaning of words constituting an alleged charge of unchastity, their context and the circumstances under which they were spoken or written must also be considered."

This court, as will be seen from the case of Nicholson v. Rust, *supra,* and others succeeding it, has adopted the rule expressed in the quoted excerpts.

It is true that we have said in a number of cases in substance that the slanderous words must clearly and unequivocally import the particular accusation complained of—Moore v. Johnson, 147 Ky. 585; McNamara v Shannon, 8 Bush 547; Tharp v. Nolan, 119 Ky. 870, and Wooten v. Martin, 140 Ky. 781—but that rule does not necessarily imply that if the entire language employed clearly imported, according to its reasonable meaning, the slanderous charge, it would not be "clearly and unequivocally" made, though not made in terms. What is meant by the rule just referred to is that the charge must be couched in language so clear that the intention of the defendant in speaking the words is not reasonably susceptible of but one conclusion, which is a guilty one. It is argued for appellee that in the cases of Peters v. Barth, 20 Ky. L. R. 1934; Feast v. Auer, 28 Ky. L. R. 794; Craig v. Piles, 101 Ky. 593, and Sturdevant v. Duke, 155 Ky. 101, this court held that the charges with reference to a woman of: "She is a dirty

bitch; she has no character, and is no account;" "She is a damn slut; she is a damn bitch; she is a damn sow, and those who know her know that she is no account," and "You are a black bitch and I can prove it, and if the whole thing has to it will come," were not slanderous *per se,* inasmuch as they did not clearly and unequivocally import a charge of adultery or fornication, nor did any of the words standing alone propose to state any facts upon which the conclusion of the speaker, as couched in them, was based.

But in the instant case we have entirely different language than that involved in the cases just referred to. It is true that this expression appears: "You are a bitch and I can prove it;" but that language is not all that plaintiff is alleged to have used on the occasion complained of. If it were, the cases just referred to would be decisive and would authorize the judgment of the court in sustaining the demurrer to the petition. The language here involved contains the further charge that plaintiff often went to the doctor's office and pulled down the blinds and locked the door, where she remained for hours and got the medicine she went for. The rule is, as we have seen, that in ascertaining the intended meaning of slanderous words the entire language attributed to the defendant may be looked to and that meaning given to them which is most natural and obvious, and which harmonizes with the ideas they were calculated to convey to the person addressed. The only innocent construction that could at all be given to the words: "You often went to Doctor Duvall's office, pulled the blinds down and locked the door, and stayed for hours, and got the medicine you went for," is that plaintiff was a patient of the doctor, and that she went to his office, and it became necessary in order to make some supposed physical examination to pull down the blinds and for them to remain so for hours, after which she would obtain the medicine she went for. But even this construction is far-fetched and extremely improbable, and may be destroyed by other qualifying expressions. On the contrary, the most reasonable interpretation of the language last quoted is that defendant's purpose was to convey the idea that plaintiff, for a guilty purpose, went to the doctor's office and that she remained there for hours, during which time she and the doctor engaged in the guilty conduct. We doubt if any in-

telligent person would construe or understand the language differently from that just given, and when there is connected with that part of the charge with reference to going to the doctor's office the expression, "You are a bitch and I can prove it," there can be no doubt of the intention of defendant in speaking the words. By the use of the opprobrious word "bitch" he intended to malign and to charge plaintiff with some kind of disreputable conduct, which is shown by the first part of the language to be adulterous conduct. If defendant had an innocent purpose in making the charge with reference to plaintiff's visits to the doctor's office he would not have followed it with the degrading epithet, "You are a bitch and I can prove it."

We agree with counsel that the innuendo may not enlarge the meaning of the spoken words beyond their natural and ordinary import, as will be seen from the cases and authorities, *supra*, but in arriving at the above conclusion we have not taken into consideration the attempted enlarged meaning of the words by the innuendo.

The language being sufficient to prefer a charge of ununchastity and adulterous conduct, independent of the innuendo, it results that the court erred in sustaining the demurrer to the petition and the judgment is reversed with directions to overrule it, and for proceedings consistent with this opinion.