## Hickerson v. Masters.

(Decided January 11, 1921.)

### Appeal from Washington Circuit Court.

1. Libel and Slander—Slander—Words Actionable Per Se—Words Charging Fornication.—To say of one that he is a whoremaster is not actionable per se, since it amounts only to a charge of fornication, which is not an infamous crime, but only a misdemeanor punishable by fine.

2. Libel and Slander—Slander—Words Actionable Per Se.—To say of one that he is a whoremaster is not actionable per se as a charge of the statutory offense of pandering.

3. Libel and Slander—Slander—Words Actionable Per Se—Words Charging a Minister With Immorality.—A charge of immorality against a minister is actionable per se without a colloquium that the words were spoken of him in his professional capacity.

JOSEPH POLIN, JOHN A. POLIN and W. F. GRIGSBY for appellant.

W. C. McCHORD and J. H. McCHORD for appellee.

Opinion of the Court by Judge Clay—Reversing.

R. J. Hickerson sued Howard Masters for slander. From a judgment sustaining a demurrer to, and dismissing the petition, plaintiff appeals:

The petition is as follows:

"The plaintiff, R. J. Hickerson, states that he now is, and was at all times hereinafter complained of, a duly ordained minister of the Gospel; that being his profession and calling in life.

"Plaintiff states that the defendant, Howard Masters, well knowing this fact, and wilfully, maliciously, wickedly and unlawfully, intending to injure plaintiff in his social and professional standing, and to impute to him unfitness to perform his duties as a minister of the Gospel and to prejudice him in said profession, did, in Washington county, Kentucky, on or about the — day of September, 1919, and in the presence and hearing of divers and different persons speaking to plaintiff's father of and concerning plaintiff falsely, maliciously, wrongfully and unlawfully used these words, to-wit: 'Well, I see your boy is home. I saw him in town the other day and sized him up, and he is nothing but a whoremaster.' Meaning thereby that plaintiff had committed and was guilty of the crime of pandering as defined by chapter 49, page 499, of the Acts of the Kentucky General Assembly 1916, now section 1215b-2, vol. 3, Carroll's Kentucky Statutes, and meaning also that plaintiff is one who procures or keeps whores for others and that he provides whores for the gratification of the lusts of others, and that plaintiff is a man who practices lewdness, and is guilty of the crime of fornication.

"Plaintiff says that he makes his living as a minister of the Gospel and that said language, which is false and untrue, has greatly injured his social and professional reputation and has caused him to suffer great mental anguish and humiliation, to his great damage in the sum of ten thousand dollars.

"Wherefore, plaintiff prays judgment against the defendant, Howard Masters, for ten thousand dollars, for his costs herein expended and for all proper relief."

No special damages being alleged, the sufficiency of the petition turns on whether the words complained of are actionable *per se*. Spoken words are actionable *per*

*se* only when they are false and (1) impute the commission of a crime involving moral turpitude for which the party might be indicted and punished; or (2) impute an infectious disease likely to exclude him from society; or (3) impute unfitness to perform the duties of an office or employment; or (4) prejudice him in his trade or profession; or (5) tend to disinherit him. Spears v. McCoy, 155 Ky. 1, 159 S. W. 610, 40 L. R. A. (N. S.) 1033. It is claimed that this case falls under classes (1) and (4). Even if it be conceded that the words charge plaintiff with the offense of fornication, they are not actionable *per se,* for fornication is not an infamous crime within the meaning of the rule, but a mere misdemeanor punishable at most by a fine of $50.00. Section 1320, Kentucky Statutes, Morris v. Barkley, 1 Litt. 64, when properly understood, does not announce a contrary rule. While it did hold that a charge of fornication against a man was actionable *per se,* the opinion was based solely on the act of 1811 which provided, "that hereafter every charge of incest, fornication or adultery, made by any citizen of this Commonwealth against one of the female sex; shall be placed on the same footing as other charges of a criminal nature for which an action will lie, according to the principles of the common law; and that all and every person or persons, for whom an action would lie, for the speaking of scandalous words, may have and maintain an action of slander, for the speaking of words containing a charge of the commission of the offenses aforesaid, or any of them, subject to the like principles, rules and regulations as are observed in other actions for slanderous words." 4 Litt. 385. Since that time the act has been repealed and re-enacted so as to leave out the provision with reference to "every person," and reads as follows: "A charge of incest, fornication or adultery against a female shall be actionable; and in such cases, the plaintiff shall not be held to allege or prove special damages." Were it not for this statute, a charge of fornication against a female would not be actionable *per se.* Pollard v. Lyon, 91 U. S. 225; Martin v. White, 188 Ky. 153, 221 S. W. 528.

But it is insisted that the language is sufficient to charge plaintiff with the offense of pandering, which is an infamous crime. Sec. 1215b-2, vol. 3, Kentucky Statutes. The ordinary and usual meaning of whoremaster

is one who practices lewdness. While the dictionaries give the word a secondary meaning of "one who keeps or procures whores for others; a pimp; a procurer," we are clearly of the opinion that this is not the usual and ordinary acceptation which is always controlling in the absence of special circumstances showing that the word was used in a different sense. Hence, we conclude that the language employed does not clearly and unequivocally import that plaintiff was guilty of the crime of pandering.

It remains to determine whether the words were such as to prejudice plaintiff in his profession of minister. It is the general rule that words tending to prejudice one in his profession are only actionable *per se* when spoken of him in his professional capacity, but the authorities make a distinction in the case of a minister and hold that a charge of immorality against him is actionable *per se* without a colloquium referring to his calling. Chaddock v. Briggs, 13 Mass. 248, 7 Am. Dec. 137; Morasse v. Brocher, 151 Mass. 567, 21 A. S. R. 474; Mc-Millian v. Birch, 1 Binney 178, 2 Am. Dec. 476; Hogg v. Dorrah, 2 Porter 212. The reason for the distinction is that a minister being both a teacher and an exemplar of morality, there is no time when he is not engaged in the pursuit of his calling. It is not possible, therefore, to draw a line of demarcation between his conduct as a minister and his conduct as a man. On the contrary, his deportment should at all times conform to the standard of purity required by his religion. An immoral man cannot be a successful minister. Destroy the people's confidence in his morality, whether in the pulpit or out, and you end his career as a minister. Hence a charge of immorality necessarily touches a minister in his calling and is actionable *per se* without an allegation that the words were spoken of him in his professional capacity. It follows that the demurrer to the petition should have been overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.