## Gastineau v. McCoy.

(Decided February 11, 1921.) •

### Appeal from Pulaski Circuit Court.

1. Libel and Slander—How Words Construed—Innuendo.—Words in a slanderous charge are to be construed according to their ordinary meaning, but such meaning may not be enlarged by innuendo, so as to give to the words an application and scope which their ordinary sense does not import; but this does not prevent the plaintiff averring extrinsic facts connecting the slanderous words with the facts as they existed, so as to show the intention of the defendant in speaking the words and the sense in which they were understood by those who heard them, provided it is not the purpose of such extrinsically alleged facts to attach a meaning to the words different from what they ordinarily import.

2. Libel and Slander—How Words Construed.—In the construction of statutes the purpose of the legislature in enacting them should be looked to and considered and the literal meaning of words will not be strictly adhered to when to do so would defeat the intent and purpose of the legislature.

3. Libel and Slander—When Words Sufficiently Accuse.—When oral slanderous words aided by extrinsic facts are sufficient to impute the charge of removing a stump of a tree, which was a corner of a survey of land, they sufficiently accuse plaintiff of the offense denounced by section 1228 of the Kentucky Statutes and will support a cause of action for slander.

J. W. COLYAR and W. M. CATRON for appellant.

VIRGIL P. SMITH and M. L. JARVIS for appellee.

Opinion of the Court by Judge Thomas—Reversing.

This is a slander suit brought by appellant and plaintiff below, G. W. Gastineau, against the appellee and defendant below, A. W. McCoy. The petition avers that defendant on four separate occasions in the presence and hearing of named persons, falsely and maliciously spoke of and concerning plaintiff certain slanderous and defamatory words imputing to him the commission of a felony. On one occasion plaintiff is alleged to have said that: "Here was the corner old man Gastineau and Ben Howard dug it up, now claims the corner down there so as to move it over on me about two rods;" on another that: "Old man Gastineau and Ben Howard dug up the corner to move down on me that much;" on another that: "Here is where Neal showed me the corner but Gastineau and Ben Howard dug it up and moved it down there," and on the fourth one, that: "Gastineau and Ben Howard moved the corner by destroying the former, and placing the one in its place, about two rods south so the line would lap over on me." The answer traversed the allegations of the petition and upon trial the court at the close of plaintiff's testimony sustained defendant's motion for a directed verdict in his favor, which was returned by the jury, followed by a judgment dismissing the petition, to reverse which plaintiff appeals.

At common law there were only five classes of cases in which oral slanderous words were actionable *per se,* but these to some extent have been added to by statutes. A notable instance with us, is section 1 of our statutes, making false accusations against a woman concerning her chasity actionable *per se* which was not so at common law. Martin v. White, 188 Ky. 153. It is unnecessary for us here to refer to or set out the various classes of defamatory words which are actionable *per se,* it being sufficient to say that a false and malicious accusation imputing to one the commission of a felony is everywhere admitted as affording the accused person a cause of action against the one uttering them without alleging or proving special damages. It is apparent that if plaintiff in the instant case has a cause of action at all, it is because the words alleged to have been uttered by defendant impute to him the commission of a felony, since they do not come within any of the other imputations which would make them actionable *per se.*

Section 1228 of the present Kentucky statutes says: "If any person shall fraudulently and willfully remove, deface, cut down, or destroy a corner tree or corner stone of the boundary of this state, or to the survey of any tract of land, he shall be confined in the penitentiary not less than one nor more than five years." Unless, therefore, the words relied on, in the light of the circumstances and under the conditions which they were spoken, were sufficient in law to convey to those who heard them the impression that defendant in using them intended to charge plaintiff with the commission of the crime denounced by the statute, the plaintiff failed, both in his pleading and proof to sustain his cause of action, and the judgment dismissing the petition should be affirmed; otherwise it should be reversed.

We are not informed as to the grounds upon which the court sustained the peremptory instruction in favor of defendant, but enough appears in the record to convince us that the court concluded that the words, standing alone, were insufficient to charge the crime denounced by the section of the statute *supra,* or, that the inducement, allegations and the colloquium averments contained in the petition, supplied the failure of the words themselves to charge the crime and remove the obscurity contained in them, so as to make the petition as a whole state a legal cause of action, but further concluded that plaintiff's testimony failed to establish his cause of action as alleged in his petition.

At common law the pleading of a plaintiff in a slander suit contained, when necessary, what was known as an "inducement," "a colloquium" and an "innuendo." The peculiar office of these separate divisions of the pleading was distinctly circumscribed, but in more modern times when the technical rules of common law pleading have been superseded by the enactment of codes of practice, the extreme common law technical rules with respect to pleadings in libel and slander cases have been largely modified, so that now if a pleading contains the necessary allegations, whether they be found in that part of it more appropriately styled the "inducement," the "colloquim" or the "innuendo," it will be sufficient although not contained in that particular division where the rules of the common law required it to be. If, therefore, the petition in this case, in any part of it, avers facts in aid of the uttered words so as to make them impute to plaintiff the commission of the offense denounced by the stat-

ute, it will be upheld as sufficient, and if the proof tended to establish those allegations the case should have gone to the jury.

In actions for libel and slander it is not essential to sustain plaintiff's cause of action that the defamatory words should be couched in the same technical language as is required to be stated in an indictment preferring the charge imputed. As said in the Martin case, *supra,* "as in other cases (than want of chastity) it is not necessary that the charge be made in direct, specific language so as to show affirmatively and beyond doubt what the speaker meant, but it is sufficient if the entire words employed in their natural and ordinary meaning were calculated to impress the hearers with the belief that the speaker intended to charge the particular slander involved and that they so understood him." As an outgrowth of this rule it is permissible for a pleading to allege extrinsic facts showing the circumstances and conditions under which the words charged were spoken, so as to connect them with such extrinsic facts, and to show that it was the intention of the speaker to prefer against plaintiff the particular charge, and that the hearers so understood the words. Thus, to charge a person with having "sworn a lie" is not *per se* slanderous, but when it is alleged that they were spoken with reference to a proceeding in which the plaintiff testified and was sworn, they become slanderous *per se.* Watson v. Hampton, 2 Bibb 319; Martin v. Melton, 4 Bibb 99; Beswick v. Chappell, 8 B. Mon. 486; 17 R. C. L. 393, and the Martin case, *supra.* This does not violate the universally accepted rule that an innuendo can not enlarge the ordinary meaning of the words so as to give them a meaning and an application contrary to that which they reasonably and ordinarily import. The rule stated above, permitting allegations and proof of extrinsic facts, does not enlarge the ordinary import of the words, but connects them with the facts of the particular case, in order to show what the speaker meant in uttering them, and to show the sense in which they were understood by those who heard them; provided the sense given them, as thus explained and applied, is not inconsistent with the meaning of the words themselves. Thus in R. C. L., *supra,* it is said: "The office of the inducement is to narrate the extrinsic circumstances which, coupled with the language published, affect its construction, and render it actionable, where, standing alone and not thus explained, the language

would appear either not to concern the plaintiff, or, if concerning him, not to affect him injuriously. This being the office of the inducement, it follows that if the language does not naturally and *per se* refer to the plaintiff, nor convey the meaning the plaintiff contends for, or if it is ambiguous and equivocal, and requires explanation by some extrinsic matters to show its relation to the plaintiff, making it actionable, the complaint must allege, by way of inducement, the existence of such extraneous matter.'' These principles are fundamental and we deem it unnecessary to prolong this opinion by further discussion or reference to precedents.

In plaintiff's petition he alleged that the words complained of were uttered with reference to a corner of a survey of land, which corner was marked and designated by a tree or stump, and which fact was known to defendant and to those who heard his words and that he spoke them with reference to the removing of such marked corner, and that he thereby intended to charge and did charge plaintiff with removing the stump which marked the corner. His proof fully sustained his allegations, and if the removing of the stump of what was formerly a ''corner tree'' is sufficient to create the offense denounced by the statute, *supra,* the peremptory instruction was improperly given. Literally speaking, the statute does not denounce the act of cutting down or destroying a corner *stump* to a survey of a tract of land, and it is therefore earnestly insisted that plaintiff's cause of action is neither sustained by his allegation nor his proof, since to constitute the felony denounced by the statute the object removed must be either a ''corner tree'' or a ''corner stone.'' But we can not accept this literal and narrow interpretation of the statute. The rule for the construction of statutes is that they should be given that interpretation which will carry out the intention and purpose of the legislature in enacting them. The gravamen of the offense denounced by the statute is the fraudulent and willful removing of a natural, fixed and selected object to designate the corner of a survey of a tract of land, and the purpose of the legislature in enacting it was evidently to punish any one for removing such designated corner in the manner stated therein and thereby to perpetrate a fraud on another to his own advantage. We think the language of the statute, viewed in the light of the purpose of its enactment, is sufficiently broad to include the fraudulent or willful removing of the stump

of a once "corner tree." We are not called upon to hold in this case that the statute would include the removal of an artificial stake driven in the ground, or any artificial marking object other than a stone (which is expressly mentioned) since the stump of a tree is a part of it and when removed leaves nothing remaining of the original natural mark. If the corner tree had been partially blown down leaving nothing but a snag, thus partially destroying it, could it be said that a fraudulent and willful removing of the snag would not constitute the offense? We think not, and by the same line of reasoning we conclude that to remove the stump in the same manner would likewise constitute the offense.

There is nothing in the Beswick case, *supra*, relied on by appellee, in conflict with the conclusions we have reached. On the contrary a reading of the opinion will show that it sustains our views. There the words charged were: "You removed the corner tree." There was no allegation in the petition to show that the words were used with reference "to the corner tree of a survey of land" and it was held that the words, standing alone unaided by allegation, did not impute to plaintiff the statutory offense. The opinion says, "That they (the words) were so used, must be shown by a distinct averment," etc., which averment was not contained in the petition in that case. It is in this *vital particular* that the instant case differs from that one.

We therefore conclude that the court erred in directing a verdict for defendant, and the judgment is reversed with directions to set it aside, to grant plaintiff a new trial and for further proceedings consistent with this opinion.