PORAK, APPELLANT, *v.* SWEITZER'S, INC., RESPONDENT.

(No. 6,607.)

(Submitted March 7, 1930.  Decided April 29, 1930.)

[287 Pac. 633.]

*Mr. Ralph J. Anderson,* for Appellant, submitted a brief and argued the cause orally.

336

*Messrs. Belden & DeKalb,* for Respondent, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This is an action for libel. Plaintiff appeals from a judgment of nonsuit.

The complaint alleges that defendant is engaged as a retail merchant at Lewistown, and that plaintiff is a resident of the same city and dependent upon her earnings as a bookkeeper for a livelihood; that defendant is a member of an organization

known as the "Honor System," an association of merchants and professional men engaged in business at Lewistown, which organization publishes reports of delinquent debtors and otherwise assists its members in the collection of accounts; that during the month of April, 1926, defendant caused numerous communications to be sent by mail to plaintiff from the "Honor System," advising plaintiff that she was indebted to defendant in the sum of $12.50 and, unless the account was paid, the association would cease to protect her credit rating; that plaintiff was not indebted to defendant; that subsequent to the tenth day of June, 1926, the name of plaintiff was published in a delinquent debtors' list of the association showing that she was indebted to one of the members in the amount named; that the publication was malicious and done for the purpose of injuring her reputation in the community where she resided. It is further alleged that defendant knew that the members of the association and others who saw the communication would know and understand that the persons whose names appeared on the delinquent debtors' list did not pay their just debts and were unworthy of credit, and that the publication was false and untrue.

Defendant denied the material allegations of the complaint, except as admitted in a further and affirmative defense, wherein it is alleged that there was an association of merchants known as the "Honor System," maintaining an office at Helena, "the purpose of which was that each merchant should notify the Helena office periodically of delinquent accounts, which accounts were tabulated, and each merchant in Lewistown who belonged to the said 'Honor System' would receive from the Helena office a list of the delinquent accounts filed with said association by merchants of Lewistown belonging to said association in Lewistown"; that each month it sent to the Helena office a list of delinquent accounts and received from that office a combined list of accounts, which included the delinquent accounts of all merchants in Lewistown who were members of the association; that long prior to June 10, 1926, plaintiff purchased on

credit from defendant certain merchandise of the value of $12.50; that numerous statements were mailed to plaintiff, but plaintiff refused to pay the account to that date; that an action was instituted against plaintiff to recover the amount due long subsequent to June, 1926. Judgment was duly entered in favor of plaintiff in this action. It is further alleged that, at the time the account was sent to the "Honor System," it was sent with other delinquent accounts, and at the time defendant had no knowledge that plaintiff disputed the account; that any communication made by the " 'Honor System' was made, without malice to persons interested in said Honor System and by parties who were also interested, or pursuant to a request for information by other members of said association, and such publications, if any were so made, were privileged and not intended to or did, in fact, by any design of defendant, reach any other parties than those who were entitled to have such information as members of said association." Issue was joined by reply.

From the evidence produced upon the trial, it appears that defendant is a member of the "Honor System"; that in January, 1926, plaintiff purchased on credit from defendant merchandise of the value of $12.50, which proved unsatisfactory to her and it was returned. As a result a controversy arose between the parties, and plaintiff refused to pay the account. Finally the "Honor System" wrote plaintiff numerous letters regarding the same, urging her to pay the account. Plaintiff not having paid the account, the "Honor System" thereafter caused to be published and mailed to its members a list of delinquent debtors containing plaintiff's name, with the amount claimed owing, which also had noted thereon the following: "Do Not Post Up," "Private Information." The evidence further shows that an action was instituted by defendant here upon the account which resulted in judgment for plaintiff in this action.

We conceive the only question presented for determination is whether the publication is libelous *per se*. If it is not,

no cause of action is stated, for it is the general rule that, unless the publication is libelous *per · se,* special damages must be alleged. (*Ledlie* v. *Wallen,* 17 Mont. 150, 42 Pac. 289; *Manley* v. *Harer,* 73 Mont. 253, 235 Pac. 757; *Brown* v. *Independent Pub. Co.,* 48 Mont. 374, 138 Pac. 258.) Here there is neither allegation nor proof of special damages.

"Libel is a false and unprivileged publication by writing * * * which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Sec. 5690, Rev. Codes 1921.)

"As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the purpose and effectual conduct of his business, owes a debt and refuses to pay or owes a debt which is long past due is not libelous *per se,* and does not render the author or publisher of such statement liable without proof of special damages." (17 R. C. L. 299; 36 C. J. 1170; note to 8 Ann. Cas. 841; see, also, *Brown* v. *Independent Pub. Co.,* supra.)

This question has frequently arisen in cases where a person's name has been published on what is known as a "black list," or "dead beat list" of some mercantile association or agency, and it has been almost universally held that, when the person's name is published with a statement of the amount he owes, the publication is not libelous *per se.* (*Hollenbeck* v. *Hall,* 103 Iowa, 214, 64 Am. St. Rep. 175, 39 L. R. A. 734, 72 N. W. 518; *Nichols* v. *Daily Reporter Co.,* 30 Utah, 74, 116 Am. St. Rep. 796; 8 Ann. Cas. 841, and note, 3 L. R. A. (n. s.) 339, 83 Pac. 573.)

We are of the opinion that the publication, standing alone, is not libelous *per se;* but counsel contends that extrinsic facts and circumstances may be pleaded rendering the same libelous *per se,* and that the allegation "that the members of said asso-

ciation and other persons who saw the list knew and understood that the names of the persons appearing thereon were branded as persons who did not pay their debts, * * * were unworthy of credit,'' brings plaintiff within the rule. Conceding, but not deciding, this to be the rule, we are of the opinion that the proof falls far short of proving the allegations of the complaint. In support of these allegations plaintiff called as a witness a member of the association who testified:

''Q. Now, then, state Mr. Krieger, *from an examination of that list what meaning is conveyed to you* with reference to the name of the plaintiff appearing thereon. A. Well, it is an unpaid bill of one of the members—that list would be a delinquent unpaid bill.

''Q. Would there be any other meaning conveyed to you by this list with reference to the name of the plaintiff appearing on there, *basing your answer on what appears on the list, and not from any outside knowledge or information?* A. I suppose I would answer that question yes. (Italics ours.)

''Q. All right. What is the further meaning or information that is conveyed to your mind by what you see on that list with reference to the plaintiff? A. Well, it would immediately be conveyed to me that she had not paid a bill that was due, without any other knowledge about it only this particular list.

''Q. Is there any further information that is conveyed to your mind by that list with reference to the name of the plaintiff, than what you have already testified to? A. I would answer that yes.

''Q. State what it is. A. That her credit would be undesirable.''

A nonmember, to whom the list had been exhibited by counsel for plaintiff, testified: ''The list I would consider a blacklist; those persons on it, persons to whom I want to inquire further before extending credit to them. I would want to know more about them, unless it was someone that I knew.''

''The opprobrious words are to be construed according to their usual, popular, and natural meaning and common

acceptation, that is, in the sense in which persons out of court and of ordinary intelligence would understand them * * * for the presumption is to be indulged that the third party or parties present so understood them.'' (*Daniel* v. *Moncure,* 58 Mont. 193, 190 Pac. 983, 985; *Honea* v. *King,* 154 Ark. 462, 243 S. W. 74; *Stevens* v. *Snow,* 191 Cal. 58, 214 Pac. 968; *People* v. *Spielman,* 318 Ill. 482, 149 N. E. 466; *Hickerson* v. *Masters,* 190 Ky. 168, 226 S. W. 1072; *Riley* v. *Gordon,* 192 App. Div. 443, 182 N. Y. Supp. 790; *Moore* v. *Levy,* (Sup.) 191 N. Y. Supp. 165.)

It has also been held that parol evidence is admissible to define and explain words which are local—that is, which are not in universal use, but are familiarly known and employed in a particular community or in a particular trade (*Herler* v. *Pierce,* 50 Pa. Super. Ct. 568), but in such case plaintiff must show extrinsic facts or circumstances surrounding the publication which give the words not ordinarily actionable a libelous signification.

Manifestly, the testimony quoted does not prove extrinsic facts or circumstances imputing to the publication the construction contended for by plaintiff. Indeed, the witnesses testified solely from what appeared upon the face of the publication. Nor is there any evidence tending to show that the publication has any unusual or peculiar signification in Lewistown.

Since the publication is not libelous *per se,* and since special damages were not pleaded, we are of the opinion that the court did not err in granting a nonsuit.

The conclusion we have reached makes a consideration of other questions presented unnecessary.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.

Rehearing denied May 21, 1930.