LEDLIE, Appellant, *v.* WALLEN, Respondent.

[Submitted November 7, 1895. Decided November 11, 1895.]

SLANDER—*Pleading—Special damage.*—Where a complaint in slander for speaking of plaintiff as a "whore" does not allege that the plaintiff was married, the words spoken will not be held to impute the offense of adultery, but to impute fornication; and where there is neither a statute punishing fornication by an unmarried woman, nor a statute making it slander *per se* to accuse a woman of unchastity, the complaint is insufficient without an averment of special damage.

SAME—*Same.*—In a complaint for slander where the words used were not actionable *per se* an allegation that they were spoken with the intent to destroy the plaintiff's business as a school teacher is an insufficient averment of special damage.

*Appeal from Fourth Judicial District, Missoula County.*

ACTION for slander. Defendant's demurrer to the complaint was sustained by Woody, J. Remanded with leave to amend.

*C. S. Marshall, George W. Reeves, Wallace P. Smith* and *Marshall & Corbett,* for Appellant.

We find no statute in Montana punishing adultery or fornication or common prostitution, and we admit that at common law, words to be actionable, must impute to plaintiff an indictable offense; or must impute to him a contagious or infectious disease tending to exclude him from society; or are spoken of him in the way of his office, profession or trade. (Odgers on Libel and Slander, 1 Am. Edition, page 53.) And

the author adds: "In no other case are spoken words defamatory, unless they have caused some special damage to
plaintiff." In accordance with that rule it has been held that
to accuse a woman of adultery or fornication is not actionable.
Those offenses not being indictable at common law, but only
cognizable in the ecclesiastical courts. That, no doubt, was
the common law and may yet be the law in England. Are the
courts of Montana bound to adopt rules of the common law
courts, which the judges of those courts themselves denounce
as "unsatisfactory" and "barbarous?" Mr. Freeman in
his notes to the case of *Coburn* v. *Harwood*, in 12 American
Decisions, page 39, says: "It has given courts and text
writers much difficulty to lay down a general and at the same
time accurate rule by which to determine what words orally
published are actionable *per se*. This difficulty and the consequent diversity of adjudication have grown out of the fact that
the actionable character of words depends very much upon the
state of public morals in the place where, and at the time when
they were uttered." That there is a diversity of adjudication
as to the rule to be applied in determining what words are actionable *per se*, is unquestionable. It is probable the courts
of no state adhere to the common law rule in all its strictness.
Mr. Odgers states the common law rule on page 54, in these
words: "Spoken words, which impute that plaintiff has been
guilty of an indictable offense, are actionable." In *Smith*
v. *Silence*, 4 Iowa 321, 66 Am. Dec. 137, an instruction that
"to call a woman a whore is actionable of itself, without proof
of special damage," was held proper. In some states words
are held actionable which impute an offense involving moral
turpitude, or which if true would have the effect to degrade
the person of whom they are spoken from the position in society to which he is entitled. Of this latter description are
all words imputing to a female unchastity, which have been
held by the courts of Iowa and other states to be actionable,
without regard to whether the charge if true would subject the
person charged to punishment or not. (*Abrams* v. *Foshee*, 3
Iowa 374, 66 Am. Dec. 77; *Smith* v. *Silence*, 4 Iowa 271, 66

Am. Dec. 137; *Afele* v. *Wright*, 17 Ohio State, 238, 93 Am. Dec. 615; *Malone* v. *Stewart*, 15 Ohio 319, 45 Am. Dec. 577; *Eden* v. *Legare*, 1 Bay 171; *Atkinson* v. *Hartley*, 1 McCord 203; *King* v. *Wood*, 1 Nott & M. 184; *Dailey* v. *Reynolds*, 49 Greene 354; *Davis* v. *Brown*, 27 Ohio St. 329.) We submit that the only sensible test is, do the words spoken tend to bring the woman of whom they are spoken into public scandal, infamy and disgrace; to degrade her from the position in society to which as a virtuous woman she is entitled. That the words charged in this action have that tendency—that the charge if true would have that effect, we think is unquestionable.

*Webster & Wood*, for Respondent.

The language used by the defendant was not slanderous *per se*. (*Nidevar* v. *Hall*, 67 Cal. 80; Odgers on Libel and Slander, §§ 3, 84, and notes; *Ayre* v. *Craven*, 4 N. & M. 220; *Wharton* v. *Brook*, Ventr. 21; *Weatherhead* v. *Armitage*, 2 Lev. 233; *Pollard* v. *Lyon*, 91 U. S. 308.) The complaint was therefore insufficient without an averment of special damage. (*McQueen* v. *Fulgham*, 27 Tex. 463; *Linney* v. *Maton*, 13 Tex. 449; *Roe* v. *Chitwood*, 32 Ark. 210; Townsend on Slander, §§ 160, 172, n. 516–518; *Abrams* v. *Foshee*, 4 Iowa 274; *Melvin* v. *Weint*, 36 Ohio St. 184; *Dukes* v. *Clark*, 2 Blackf. 20; *Brooker* v. *Johnson*, 5 Johns 188; *Beach* v. *Ranney*, 2 Hill 309; Starkie on Slander, 166; *Woodbury* v. *Thompson*, 3 N. H. 194; *Dunnell* v. *Fiske*, 11 Metc. 552.) The case of *Malone* v. *Stewart*, 15 Ohio 319, relied upon by appellant has never received the approval of any other court of last resort, and was so criticised in *Abrams* v. *Foshee*, 66 Am. Dec. 77.

HUNT, J.—Plaintiff sues defendant in action for slander to recover damages. She charges that defendant wickedly, maliciously, and falsely, and with intent to injure and destroy her business of school teaching, spoke of her to various persons as a "damned dirty whore," and that by reason of the speaking

of the said false and slanderous words plaintiff is and has been damaged in the sum of $5,000. From the complaint we cannot tell whether the plaintiff was a single or married woman, nor is there any allegation of special damage, except such as may be inferentially drawn from the charge that she has suffered damage in her character, good name, and reputation, and from the intent to destroy her business as a school teacher. The district court sustained a general demurrer. Plaintiff declined to amend, judgment went against her, and she appeals.

The case at bar is almost exactly like that of *Pollard* v. *Lyon*, 91 U. S. 225, where the supreme court reviews with great care the authorities upon actions in slander in England and in our own country. In that case a woman sued. The words spoken of her were, "I saw her in bed with Captain Denty." They were treated as charging lack of chastity. It was there held, as it must be in this case, that the words used did not impute the offense of adultery, inasmuch as the complaint did not allege that either plaintiff or the defendant was married at the time the words were spoken. Upon that authority we will regard the words in this case as imputing fornication to the plaintiff. But at the time this action was brought there were no statutes in this state punishing fornication by an unmarried woman, nor was there any law making it slander *per se* to accuse a woman of unchastity. The plaintiff's remedy, if any she has, must therefore be upon the theory that the words spoken were actionable *per se* without a statute making them so.

The common law, except in certain cases not necessary here to be considered, as declared by an overwhelming line of the highest authorities, is that "unwritten words, by all, or nearly all, the modern authorities, even if they impute immoral conduct to the party, are not actionable in themselves, unless the misconduct imputed amounts to a criminal offense, for which the party may be indicted and punished." (*Pollard* v. *Lyon*, *supra*; Odgers, Sland. & L. p. 53; *Dunnell* v. *Fiske*, 11 Metc. (Mass.) 551; Townsh. Sland. & L. pp. 189, 162; Newell, Defam. pp. 163, 192.) The common law did not punish forni-

cation. Redress was alone furnished in the ecclesiastical courts. Therefore, to charge a woman with a breach of chastity, to call her a "whore," was not actionable, except by custom in London, without averring and proving special damages. (*Frisbie* v. *Fowler*, 2 Conn. 707; Bish. New Cr. Law, § 38.)

Odgers (Sland. & L. p. 88) writes that: "Two explanations may be assigned for the undesirable state of our law on this point: (1) In the days when our common law was formed, every one was much more accustomed than they are at present to such gross language, and epithets such as 'whore' were freely used as general terms of abuse, without seriously imputing any specific act of unchastity. (2) The spiritual courts had jurisdiction over such charges, and, though they could not award damages to the plaintiff, they could punish the defendant for the benefit of his soul; but all actions in the ecclesiastical courts for defamatory words were abolished by 18 & 19 Vict. c. 41, and no attempt was made to substitute any remedy in the ordinary courts of law." (Hill, Torts, § 29; *Shafer* v. *Ahalt*, 48 Md. 171; *Terwilliger* v. *Wands*, 17 N. Y. 54; *Douglas* v. *Douglas* (Idaho), 38 Pac. 934.)

We agree with the appellant's counsel that, if the words spoken are not actionable in themselves, "it is a disgrace to the state." Lord Brougham, over half a century since, pronounced such a condition of the law "barbarous," and Chief Justice Cockburn, more recently, in *Roberts* v. *Roberts*, 5 Best & S. (Q. B.) 384, said: "I think that to prevent a woman whose character for chastity is assailed from bringing an action for the purpose of vindicating it is cruel; but, as the law at present stands, such an action is not maintainable, unless it be shown that the loss of some substantial or material advantage has resulted from the speaking of the words. That is not shown in this declaration, and therefore I reluctantly hold that the demurrer is good."

But to supply the omissions of the law (and Montana was one of the exceptions, in having no legislation on this subject), we cannot construct statutes without legislating, which is beyond our power. The very few decisions where actions like

this have been sustained without warrant of statute, and where
no special damages are alleged, have not been followed or ap-
proved of by text writers or judges generally.   To the credit
of the state the law is now changed, for we note that by the
Code of 1895 (section 457, Penal Code) every person guilty of
living in an open and notorious state of fornication is punisha-
ble, while slander, among other meanings, is defined to be a
false and unprivileged publication other than libel, which im-
putes to a woman ''want of chastity.''

But, conceding that the words in themselves are not action-
able, it is nevertheless contended that plaintiff pleads that the
defamatory words were spoken with the intent to injure her,
not alone as a woman, but in her business or profession as a
school teacher.   This argument, when sifted, is that she has,
by reason of the use of the slanderous words, stated enough to
sustain her action as one for special damage to her business.
Upon this point the rule is, a plaintiff may recover for defama-
tory words spoken of her, even though the words spoken are
not in themselves actionable, if the complaint alleges such claim
in due form, and the evidence is sufficient; ''but the claim must
be specifically set forth, in order that the defendant may be
duly notified of its nature, and that the court may have the
means to determine whether the alleged special damage is the
natural and proximate consequence of the defamatory words al-
leged to have been spoken by the defendant.'' (*Pollard* v.
*Lyon*, *supra.*)

The supreme court of Massachusetts, in *Cook* v. *Cook*, 100
Mass. 194, says : '' To sustain the action on this ground, it
is necessary that the declaration should set forth precisely in
what way such special damages resulted from the words relied
on.   It is not sufficient to allege generally that the plaintiff
has suffered special damages, or that he has been put to great
costs and expenses thereby, or that he has had to pay one hun-
dred dollars in costs to the other party in the suit, in refer-
ence to which the words are alleged to have been spoken, in
the form of testimony.   It must be made to appear by proper
averments, how these special damages were occasioned by the

words alleged to have been uttered falsely and maliciously.'' (See, also, Odgers on Slander & Libel, page 302.)

The authorities generally hold that special damages are a pecuniary loss, but the United States supreme court includes in this class the loss of substantial hospitality of friends, and cites, as among other illustrative examples given by text writers, '' loss of marriage, loss of profitable employment or of emoluments, profits, or customers,'' etc. (Newell on Defam. page 850; Townsh. on Slander & Libel, § 345.) It is unnecessary to decide what special damages will support the action, but such damages, whatever they may be, must be pleaded with certainty, not as they are in plaintiff's complaint.

We are reluctant to deny the plaintiff another opportunity to amend her complaint, and have concluded to ' remand the case, with directions that if the plaintiff, within 30 days from the filing of the remittitur in this case in the district court, offers an amended complaint, properly pleading special damages, the judgment should be set aside, and the action proceeded with; otherwise the judgment of the district court will be affirmed.

*Remanded.*

PEMBERTON, C. J., and DE WITT, J., concur.