TUCKER, APPELLANT, *v.* WALLACE, RESPONDENT.

(No. 6,796.)

(Submitted September 14, 1931.  Decided September 24, 1931.)

[3 Pac. (2d) 404.]

*Mr. S. P. Wilson,* for Appellant.

*Mr. W. E. Keeley*, for Respondent.

362

MR. JUSTICE MATTHEWS delivered the opinion of the court.

L. E. Tucker brought action against Martha J. Wallace for damages for alleged slander. Demurrer to the complaint was sustained on the ground of failure to allege facts sufficient to constitute a cause of action, and, plaintiff refusing to further plead, judgment of dismissal followed. Plaintiff has appealed from the judgment.

Briefly stated, the complaint alleges the following facts: In October, 1929, plaintiff leased of defendant a 14,000-acre ranch for the purpose of carrying on an extensive farming and cattle-raising business and therein required the extension of considerable credit for the employment of help and purchase of supplies. The term of the lease was ten years; the rental $10,000; the first year's rent payable at its expiration, and thereafter rent payable semi-annually. At the same time plaintiff executed to defendant a chattel mortgage on hay purchased from her, to secure a purchase price note for $7,864. The negotiations were carried on through William Hibbs Wallace as agent for defendant.

It is alleged that almost immediately the defendant conceived the unlawful purpose of causing plaintiff to forfeit his lease by destroying his credit, and that, to this end, on February 20, 1930, she "caused her said agent, William Hibbs Wallace, to speak to one Matthew Brown, the following false, slanderous and unprivileged words of and concerning plaintiff, to-wit:

"I don't think or see how Mr. Tucker could go through with the lease on the ranch and if he is going to fall down on going through with it, I would rather that Mr. Tucker would give up the lease in the spring than wait until fall; that there would be less loss to both in that case."

It is then alleged, "meaning thereby and intending by said words to say that plaintiff did not have financial means or ability to perform and fulfill his said lease." The prayer is for $10,000 actual, and $5,000 exemplary, damages.

As no special damages are pleaded, the court's ruling on the demurrer is correct, unless the publication constitutes slander *per se.* (*Daniel* v. *Moncure,* 58 Mont. 193, 190 Pac. 983.)

In so far as applicable here, section 5691, Revised Codes of 1921, reads: "Slander is a false and unprivileged publication other than libel, which: * * * 3. Tends directly to injure him [a person] * * * by imputing something with reference to his * * * business that has a natural tendency to lessen its profit. * * * "

The quoted communication is not privileged (sec. 5692, Id.) and is alleged to be false. One who conducts a general farming business is included in a proper interpretation of such a statutory definition as ours. (*Johnson* v. *Spence,* 19 Ga. App. 554, 91 S. E. 889; Id., 142 Ga. 267, Ann. Cas. 1916A, 1195, 82 S. E. 646.) If, therefore, the statement quoted tends directly to injure the plaintiff in his farming operations and a principal may slander another by agent, a cause of action is stated in the complaint, provided the publication is "slander *per se.*"

The term *"per se"* means "by itself, simply as such; in its own nature without reference to its relations," and, to constitute libel (or slander) *per se,* the published statement of or concerning the plaintiff must be susceptible of but one meaning. (*Woolston* v. *Free Press, ante,* p. 299, 2 Pac. (2d) 1020), and therefore a publication which requires innuendo to demonstrate wherein it is slanderous cannot be slanderous *per se.* (*Nolan* v. *Standard Pub. Co.,* 67 Mont. 212, 216 Pac. 571; *Manley* v. *Harer,* 73 Mont. 253, 235 Pac. 757; *Porak* v. *Sweitzer's, Inc.,* 87 Mont. 331, 287 Pac. 633; *Kosonen* v. *Waara,* 87 Mont. 24, 285 Pac. 668.)

A principal may be liable for a libel or slander published by his agent by his authority and with his consent (Odgers on Libel & Slander, 6th ed., 472), but a distinction exists as to libel and slander; the first may have wide circulation, may be published to all the world, while the spoken word reaches only those to whom it is directed; consequently,

liability for slander attaches only to the initial publication, and the offender is not liable for its repetition, unless he requests or intends its repetition.

Odgers (page 146) thus illustrates the English rule applicable to slander: "If I myself tell the story to your employer, who thereon dismisses you, you have an action against me; but if I only tell it to your friends and relations and no pecuniary damage ensues from my communication of it to any one, then no action lies against me, although the story is sure to get round to your master sooner or later. The man whose lips actually utter the slander to your master, is the only person that can be made defendant; for it is his publication alone which is actionable as causing special damage. The law is the same in America (*Gough* v. *Goldsmith*, 44 Wis. 262, 28 Am. Rep. 579; *Shurtleff* v. *Parker*, 130 Mass. 293, 39 Am. Rep. 454). * * * Where the words are actionable *per se*, the jury finds the damages *generally*, and will judge from the circumstances which of the defendants is most to blame (*Harris* v. *Minvielle*, 48 La. Ann. 908 [19 South. 925]; *Fitzpatrick* v. *Daily State Pub. Co.*, 48 La. Ann. 1116 [20 South. 173])."

It would seem, therefore, that, in case of slander, it is important to show where the statement was made and that the person to whom it was made was in a position to injure plaintiff's business; this was not done in the instant case. In so far as the complaint here shows, "Matthew Brown" may have been an Iowa tourist met by William Hibbs Wallace at Palm Beach.

The allegations of the complaint respecting plaintiff's operations, necessary expenditures, and necessity of extensions of credits may be termed "inducement" and "colloquium," as defined in *Nolan* v. *Standard Publishing Co.*, above; but the allegation following the quotation of the alleged slanderous statement, that "meaning thereby * * * that plaintiff did not have financial means or ability to perform and fulfill his said lease," is strictly innuendo, pleaded in an attempt to show wherein the spoken words were slanderous. Without such innuendo, clearly the spoken words do not constitute slander *per*

*se;* they are but the expression of an opinion, whether that of the speaker or his alleged principal (*Manley* v. *Harer,* 73 Mont. 253, 235 Pac. 757); they could not injure plaintiff in his business unless spoken to someone in a position to affect that business, and it is exceedingly doubtful whether any innuendo or inducement could be pleaded which would make the publication actionable, even though special damages were pleaded. The demurrer was properly sustained.

Judgment affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.