KELLER v. SAFEWAY STORES, Inc.
No. 912.

District Court, D. Montana, Butte Division.
July 27, 1936.

R. Lewis Brown and J. F. Emigh, both of Butte, Mont., for plaintiff.

Kremer & Kremer and H. D. Carmichael, all of Butte, Mont., for defendant.

BALDWIN, District Judge.

The action is based upon certain statements said to have been made by agents of the defendant, acting within the scope of their employment, of and concerning plaintiff.

Three causes of action are attempted to be set out in the complaint. The defendant has, by general demurrer, attacked the sufficiency of each of them.

The portions of the several causes of action which plaintiff contends show an infringement of her primary right by the defendant are as follows:

### First Alleged Cause of Action.

"That heretofore, and on or about the 29th day of January, A. D. 1935, the defendant, Safeway Stores Incorporated, a corporation, then and there acting by and through its agent, Alvin Cobb, which said agent was then and there acting within the course and scope of his employment, did falsely, in the presence and hearing of Mrs. Annie Bawden, at or near 1520 Clayton Avenue, Butte, Silver Bow County, Montana, utter, speak and publish of and concerning plaintiff false and defamatory words as follows:

" 'She (speaking of plaintiff) cashed a check at the Safeway Store and ordered a sack of flour sent to an address where there was no house and received change for the check. The check was no good and if you (referring to Mrs. Annie Bawden) don't have her (speaking of plaintiff) come down and see me, we will have the Sheriff after her' (speaking of plaintiff); to the damage of plaintiff in the sum of $10,-000.00."

### Second Alleged Cause of Action.

"That, as plaintiff is informed and believes, on or about the 26th day of January, A. D. 1935, some person, to plaintiff unknown, delivered and passed to the said defendant, Safeway Stores Incorporated, at 129 North Main Street, Butte, Montana, a false and fraudulent check in an amount unknown to plaintiff, and did receive in payment therefor certain goods, wares and merchandise unknown to plaintiff, as well as certain sums of money and change, the exact amount being to plaintiff unknown; but all of which is well known to the defendant; that on or about the 29th day of January, A. D. 1935, the said Alvin Cobb, while acting within the course and scope of his employment as agent and employee of the defendant, Safeway Stores Incorporated, did go to the home of plaintiff's mother, Mrs. Annie Bawden, at 1520 Clayton Avenue, Butte, Silver Bow County, Montana, and did then and there demand of said Mrs. Annie Bawden that plaintiff on the following day come to the store of the defendant, Safeway Stores Incorporated, at 129 North Main Street, Butte, Montana, and did threaten to send a Sheriff for plaintiff if plaintiff did not go to said store; that thereafter, and on or about the 30th day of January, A. D. 1935, plaintiff did go to the store of the said Safeway Stores Incorporated, and there, in the presence of divers and numer-

ous good citizens of Silver Bow County and the State of Montana, and in the hearing of said persons and in the presence and hearing particularly of Jerry Keller and Chris Aho, whereupon in the presence and hearing of said persons and within sight thereof, the said Alvin Cobb, while acting within the course and scope of his employment as agent of defendant, did exhibit and wave about in the air a check, which plaintiff is advised and believes, and therefore alleges was a worthless and fictitious check theretofore passed upon the said Safeway Stores Incorporated, by some person or persons unknown to plaintiff, and did then and there say to said John Doe O'Brian: 'Is that the girl that passed this check?' (referring to plaintiff), whereupon the said John Doe O'Brian said: 'Yes, that is the girl,' (indicating plaintiff); thereupon, the said Alvin Cobb, in the presence and hearing of said persons, stated: 'There is another woman coming up here from the Federal Bakery to identify her,' (indicating plaintiff) whereupon in the presence, sight and hearing of said persons so gathered together, the said Alvin Cobb informed plaintiff that he would call the Sheriff and demand of plaintiff that she go to the County Attorney's Office at the Court House in Silver Bow County, Montana."

### Third Alleged Cause of Action.

"That, as plaintiff is informed and believes, on or about the 26th day of January, A. D. 1935, some person to plaintiff unknown, delivered and passed to the said defendant, Safeway Stores Incorporated, at 129 North Main Street, Butte, Montana, a false and fraudulent check in an amount unknown to plaintiff, and did receive in payment therefor certain goods, wares and merchandise unknown to plaintiff, as well as certain sums of money and change, the exact amount being to plaintiff unknown, but all of which is well known to defendant; that the check hereinafter referred to, as plaintiff is informed and believes, and therefore alleges on information and belief, is the false and fraudulent check so passed and delivered to the said defendant on or about the 26th day of January, A. D. 1935, by some person unknown to plaintiff; that on or about the 30th day of January, A. D. 1935, at the office of the County Attorney of Silver Bow County, Montana, in the Court House at Butte, Montana, in the presence and hearing of divers persons there gathered together, and

particularly in the presence and hearing of Joe Boric, Deputy Sheriff of Silver Bow County, Montana, T. F. O'Connell, Deputy County Attorney of Silver Bow County, Montana, D. D. Semrou, Manager of the defendant corporation, and Jennie Doe, whose true name is unknown to plaintiff, but who was at said time, as plaintiff is informed and believes, an employee of the Federal Bakery of Butte, Montana, John Doe O'Brian, while acting within the course and scope of his employment as agent and employee of defendant, speaking of and concerning the worthless check theretofore passed upon said defendant on or about the 26th day of January, A. D. 1935, by some person unknown to the plaintiff, said of and concerning plaintiff 'She is the girl that passed the check. I've known her for four years or I would not have cashed the check.'"

The case is grounded upon the provisions of subdivision 1 of section 5691 of the Revised Codes of Montana, 1921, which, so far as it is material here, is as follows: "Section 5691. Slander, what constitutes. Slander is a false and unprivileged publication other than libel, which: 1. Charges any person with crime. * * *"

No special damages are alleged or claimed.

Defendant contends that none of the quoted language, attributed to defendant's agents, "charges the plaintiff with the commission of any crime, hence the quoted language is not slanderous per se," with the result that as no special damages are alleged by plaintiff the complaint does not state facts sufficient to constitute a cause of action.

In reply, plaintiff says: "We agree with counsel for defendant that unless the statements attributed to defendant's agents of and concerning plaintiff, as set forth in the respective causes of action are slanderous per se, the cause or causes of action setting forth such matter, is or are vulnerable to a general demurrer, as no special damage is alleged, the plaintiff relying only upon such damage as is presumed to flow from a false, defamatory and slanderous charge which is actionable per se, that is, which on its face is slanderous taking into consideration the time, place and circumstances under which the utterance was made."

In their briefs filed therein plaintiff and defendant agree that as no special damage

is alleged therein each cause of action set out in the complaint is vulnerable to attack by general demurrer unless the statement said to be false and defamatory is slanderous per se. This concession must of necessity be made, for such is the settled law in Montana. Ledlie v. Wallen, 17 Mont. 150, 42 P. 289; Brown v. Independent Publishing Company, 48 Mont. 374, 389, 390, 138 P. 258; Burr v. Winnett Times Publishing Company, 80 Mont. 70, 76, 258 P. 242; Porak v. Sweitzer's, Inc., 87 Mont. 331, 338, 339, 287 P. 633; Tucker v. Wallace, 90 Mont. 359, 364, 3 P.(2d). 404; Campbell v. Post Publishing Company, 94 Mont. 12, 17, 20 P.(2d) 1063. See, also, Pollard v. Lyon, 91 U.S. 225, 23 L.Ed. 308.

The precise question then presented for consideration and decision is, Are the words said to have been spoken by defendant's agents of and concerning plaintiff slanderous per se?

In Tucker v. Wallace, 90 Mont. 359, 364, 3 P.(2d) 404, 405, the court said: "The term 'per se' means 'by itself, simply as such; in its own nature without reference to its relations,' and, to constitute libel (or slander) per se, the published statement of or concerning the plaintiff must be susceptible of but one meaning (Woolston v. Free Press [90 Mont. 299] 2 P.(2d) 1020), and, therefore, a publication which requires innuendo to demonstrate wherein it is slanderous cannot be slanderous per se."

In Manley v. Harer, 73 Mont. 253, 256, 258, 235 P. 757, 758, the court stated the rule as follows:

"Words are defamatory per se which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken. If the injurious character of the words does not appear from their face when taken in their plain and natural meaning and according to the sense in which they appear to have been used, they are not defamatory per se but are said to require innuendo. 36 C.J. 1150.

" 'When the words are unequivocal in their import, and obviously defamatory, it is not necessary to employ colloquium or innuendo to explain their application and meaning; but if the words be of doubtful significance or derive their libelous character not from their own intrinsic force, but from extraneous facts it is necessary to allege the meaning intended, or set forth such extraneous facts by proper averments.' * * * 'Words which are defamatory per se do not need an innuendo, and, conversely, words which do need an innuendo are not defamatory per se.' 36 C.J. 1151.

"When the publication is libelous per se, the plaintiff may recover general damages without allegation or proof of special damages. * * * The reason is that words defamatory per se carry the presumption of falsity and damage. 36 C.J. 1151; 17 R.C.L. 264.

"To be characterized as libelous per se, the words as used must be susceptible of but one meaning. Brown v. Independent Publishing Company, supra [48 Mont. 374, 138 P. 258]; Shaffroth v. The Tribune, 61 Mont. 14, 201 P. 271. If the words are not actionable per se, there can be no recovery of general damages, because in such a case the law, in the absence of pleading and proof to that end, does not presume falsity nor damage. Where the words are not actionable per se, the pleader must state the facts which show them to be libelous, and likewise must plead the resulting injury; he must plead the facts which show the character and extent of the injury he claims to have sustained; he must plead special damages. Ledlie v. Wallen, 17 Mont. 150, 42 P. 289; Lemmer v. Tribune, 50 Mont. 559, 148 P. 338. This is why it is said that a complaint based upon words that are defamatory not per se but per quod (Three Blackstone's Commentaries, 134; Black's Law Dictionary, 'Per Quod'), in the absence of an allegation of special damages does not state a cause of action (Brown v. Independent Publishing Company, supra [48 Mont. 374, 138 P. 258]; Nolan v. Standard Publishing Company, 67 Mont. 212, 216 P. 571)."

In Woolston v. Montana Free Press et al., 90 Mont. 299, 309, 310, 2 P.(2d) 1020, 1021, the court stated the rule as follows:

"The term 'per se' means 'by itself; simply as such; in its own nature without reference to its relations.' Standard Dictionary. It is well-settled law that the words used in the alleged libelous article must be susceptible of but one meaning to constitute libel per se, and that the libelous matter may not be segregated from other parts and construed alone. [Citing cases.]

"The entire printed statements must be viewed by the court as a stranger might

look at it, without the aid of special knowledge possessed by the parties concerned."

In Burr v. Winnett Times Publishing Company, 80 Mont. 70–75, 258 P. 242, 243, the court used this language:

"Libel is libel per se or per quod. * * * '"Per se" means "by itself; simply as such; in its own * * * relation," * * * and that, in connection with slander and libel, the term is applied to words which are actionable because they, of themselves, without anything more, are opprobrious. * * * In order to render a publication actionable per se, the language used therein must be susceptible of but one meaning, and that an opprobrious one.' Rowan v. Gazette Printing Co., 74 Mont. 326, 239 P. 1035. It is so held also in Manley v. Harer, 73 Mont. 253, 235 P. 757; Brown v. Independent Publishing Co., 48 Mont. 374, 138 P. 258; and other decisions of this court.

"'The opprobrious words are to be construed according to their usual, popular and natural meaning and common acceptation, that is, in the sense in which persons out of court and of ordinary intelligence would understand them.' Daniel v. Moncure, 58 Mont. 193, 190 P. 983."

The rule appears to be the same in the federal courts.

In Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 17 F.(2d) 255, 257, 258, 52 A.L.R. 1187, the Circuit Court of Appeals, Eighth Circuit, said:

"'It has been held that, in order to constitute language libelous per se, it must be "either such as necessarily, in fact, or by presumption of evidence, occasions damage to him of whom or whose affairs it is spoken." Townsh.Sland. & L.(4th Ed.) § 146; Newell, Defam. p. 181, § 14. "Such language confers a prima facie right of action, and is prima facie a wrong, and injurious per se; and the law will presume damage, without proof, merely from implication or presumption from the publication." Townsh.Sland. & L.(4th Ed.) § 147. "Language which, however, does not, as a necessary consequence, occasion damage to the party published, is not per se libelous, and in such cases a right of action exists only when, as a necessary and proximate consequence of the publication, special damage ensued to the party published." Id. §§ 146–148; Bank v. Bowdre, 92 Tenn. [723] 736, 23 S.W. 131. We think a statement in substance and effect the same, but in different language, is that words which upon their face, and without the aid of extrinsic proof, are injurious, are libelous per se; but if the injurious character of the words appear, not from their face, in their usual and natural significance, but only in consequence of extrinsic circumstances, they are not libelous per se.'

"The Circuit Court of Appeals for the Sixth Circuit, in Memphis T. Co. v. Cumberland T. & T. Co., supra [145 F. 904], quotes with approval the definition of a publication libelous per se given in Fry v. McCord, supra [95 Tenn. 678, 33 S.W. 568]."

At common law, the rule, except in certain cases not necessary here to be considered, is that unwritten words, even if they impute immoral conduct to the party, are not actionable in themselves, unless the misconduct imputed, amounts to a criminal offense, for which the party may be indicted and punished. Pollard v. Lyon, 91 U.S. 225, 23 L.Ed. 308; Ledlie v. Wallen, 17 Mont. 150, 42 P. 289.

The strict rule of the common law has been relaxed by statute in Montana, and it is no longer necessary in this state that the opprobrious words, if true, spoken of or concerning the party complaining should be such as to justify his indictment or punishment for a crime of the felony grade.

Slander is defined as "a false and unprivileged publication other than libel, which: 1. Charges any person with crime." Section 5691, Revised Codes of Montana 1921.

"A crime * * * is an act committed * * * in violation of a law forbidding * * * it, and to which is annexed, upon conviction, either of the following punishments: 1. Death; 2. Imprisonment; 3. Fine; 4. Removal from office; or, 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this state." Section 10721, Revised Codes of Montana 1921. With the result that if the words spoken charge the person complaining with crime they are actionable per se without regard to the grade of the crime charged, its moral nature or the punishment that may be inflicted upon conviction thereof, provided, of course, that the punishment falls within the limits fixed by the statutory provision last referred to. However, the fact remains that the complaint in the case at bar fails to state facts sufficient to constitute a cause of action and

is open to attack by general demurrer, unless the words said to have been spoken and published by defendant's agents of and concerning the plaintiff do, in fact, charge her with crime.

Whether or not these words do or do not charge the plaintiff with crime, within the meaning of the statute, can only be determined by measuring them with certain well-defined rules established by law in Montana.

It is the law in Montana: (1) That in determining whether false defamatory words, said to have been spoken of and concerning the party complaining, are or are not slanderous per se, the opprobrious words are to be construed according to their usual, popular, and natural meaning and common acceptation, that is, in the sense in which persons out of court and of ordinary intelligence would understand them, for the presumption is to be indulged that the third party or parties present so understood them (Daniel v. Moncure, 58 Mont. 193, 200, 190 P. 983; Burr v. Winnett Times Publishing Company, 80 Mont. 70, 75, 258 P. 242; Porak v. Sweitzer's, Inc., 87 Mont. 331, 340, 341, 287 P. 633; Campbell v. Post Publishing Company, 94 Mont. 12, 17, 18, 20 P.(2d) 1063); (2) that the statement made must be viewed by the court as a stranger might look at it, without the aid of special knowledge possessed by the parties concerned (Campbell v. Post Publishing Company, 94 Mont. 12, 18, 20 P.(2d) 1063; Woolston v. Montana Free Press, 90 Mont. 299, 310, 2 P.(2d) 1020); (3) that the language used must be susceptible of but one meaning, and that an opprobrious one (Campbell v. Post Publishing Company, 94 Mont. 12, 18, 20 P.(2d) 1063; Burr v. Winnett Times Publishing Company, 80 Mont. 70, 75, 258 P. 242; Manley v. Harer, 73 Mont. 253, 258, 259, 235 P. 757; Brown v. Independent Publishing Company, 48 Mont. 374, 380, 138 P. 258); and (4) that innuendo cannot change the character of the publication. If it is not slanderous per se it cannot be made so by innuendo (Brown v. Independent Publishing Company, 48 Mont. 374, 380, 138 P. 258; Daniel v. Moncure, 58 Mont. 193, 200, 201, 190 P. 983), for "the term 'per se' means 'by itself; simply as such; in its own nature without reference to its relations'"; and therefore a publication which requires innuendo to demonstrate wherein it is slanderous cannot be slanderous per se. Woolston v. Montana Free Press, 90 Mont. 299, 308, 2 P.(2d) 1020; Tucker v. Wallace, 90 Mont. 359, 364, 3 P.(2d) 404; Manley v. Harer, 73 Mont. 253, 258, 235 P. 757; Daniel v. Moncure, 58 Mont. 193, 199, 200, 190 P. 983; Pollard v. Lyon, 91 U.S. 225, 23 L.Ed. 308.

In her brief the plaintiff admits the existence of each of these rules of law and their applicability to the pleading here under consideration, but contends that the words said to have been spoken by defendant's agents of and concerning her charge plaintiff with crime within the meaning of sections 11355, 11361, 11369, or 11410 of the Revised Codes of Montana 1921. So far as they are material here, the sections of the Code just referred to are as follows:

"11355. Forgery of wills, conveyances, etc. Every person who, * * * falsely makes, alters, forges, or counterfeits any * * * check * * * for the payment of money, * * * or passes * * * as true and genuine any of the above-named false, altered, forged, or counterfeited matters as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person, * * * is guilty of forgery."

"11361. Making, passing, or uttering fictitious bills, etc. Every person who * * * passes, * * * with intention to defraud any other person, * * * any fictitious * * * check, purporting to be the * * * check * * * for the payment of money or property of some bank, corporation, copartnership, government, or individual in existence, when in fact there is no such bank, * * * copartnership, government, or individual in existence, knowing the * * * check * * * to be fictitious, is punishable by imprisonment in the state prison for not less than one nor more than fourteen years."

"11369. Uttering fraudulent checks or drafts—evidence. Any person who, with intent to defraud, * * * shall * * * utter or deliver any check, * * * for the payment of money, upon any bank or other depositary, knowing at the time of such * * * uttering, or delivering that the maker * * * has not sufficient funds in or credit with such bank or depositary for the payment of such check, * * * although no especial representation is made in reference thereto, shall be guilty of a misdemeanor, if said check

\* \* \* is for the sum of fifty dollars or less; and if said check \* \* \* is for more than fifty dollars shall be deemed a felony and punished as provided for in section 11373 of this code, for grand larceny."

"11410. Obtaining money or property by false pretenses. Every person who knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property, \* \* \* is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

It is evident that before plaintiff could properly be charged with crime within the meaning of section 11355 of the Revised Codes of Montana 1921, it must be made to appear, first, that she passed a check as true and genuine; second, that the check so passed was false, altered, forged, or counterfeit; third, that she knew the same to be false, altered, forged, or counterfeited; and, fourth, that she intended to prejudice, damage, or defraud some person.

Before plaintiff could properly be charged with crime under the provisions of section 11361 of the Revised Codes of Montana 1921, it must be shown, first, that she passed a check; second, with intention to defraud some other person; third, that the check was fictitious; fourth, that it purported to be the check for the payment of money or property of some bank, corporation, copartnership, government, or individual in existence; fifth, that in fact there was no such bank, corporation, copartnership, government, or individual in existence; and, sixth, that at the time she passed the check plaintiff knew the same to be fictitious.

The elements necessary to charge plaintiff with crime pursuant to section 11369, Revised Codes of Montana 1921, are: First, that she uttered or delivered a check for the payment of money, upon a bank or other depositary; second, that she knew at the time of such uttering or delivering that the maker or drawer thereof then had not sufficient funds in or credit with such bank or depositary for the payment of such check; and, third, that she acted with intent to defraud.

To justify plaintiff's prosecution for crime under section 11410 of the Revised Codes of Montana 1921, it must be proved, first, that she made to the person injured one or more representations of past evi-

dence or existing facts; second, that such injured person believed such representation to be true and relying thereon parted with money or property which was received by her; third, that such representations were false; fourth, that they were made knowingly and designedly; and, fifth, with intent to defraud such other person. State v. Woolsey, 80 Mont. 141, 155, 259 P. 826.

It cannot be questioned that knowledge and intent are both essential to the commission of crime within the meaning of the provisions of the Montana Code above referred to; sections 11355, 11361, 11369, and 11410.

Under section 11355, knowledge on the part of plaintiff that the check said to have been passed by her was false, altered, forged, or counterfeit and a specific intent to prejudice, damage, or defraud some one.

Under section 11361, that at the time she passed the check plaintiff knew that the same was fictitious, and that so knowing she passed the same with intent to defraud some other person.

Under section 11369, that plaintiff knew at the time she passed the check that the maker thereof then had not sufficient funds in or credit with the bank or depositary on which it was drawn for the payment of such check, and that she acted with intent to defraud.

Under section 11410, that plaintiff knowingly and designedly made to the person injured one or more false representations of past or existing facts with intent to defraud that person.

When the words used in the first, second, and third causes of action set out in the complaint herein, first cause of action: "She (speaking of plaintiff) cashed a check at the Safeway Store and ordered a sack of flour sent to an address where there was no house and received change for the check. The check was no good and if you (referring to Mrs. Annie Bawden) don't have her (speaking of plaintiff) come down and see me, we will have the Sheriff after her (speaking of plaintiff)"; or, second cause of action, "Alvin Cobb said \* \* \* 'is that the girl that passed this check,' whereupon the said John Doe O'Brian said: 'Yes, that is the girl,' (indicating plaintiff) thereupon, the said Alvin Cobb, in the presence and hearing of said persons stated: 'There is another woman coming up here from the Federal Bakery to identify her,' (indicating plain-

-iff) whereupon and in the presence, sight and hearing of said persons so gathered together, the said Alvin Cobb informed plaintiff that he would call the sheriff and demand of plaintiff that she go to the County Attorney's office at the court house in Silver Bow County, Montana"; or, third cause of action, "At the office of the County Attorney of Silver Bow County, Montana * * * in the presence and hearing of divers persons * * * John Doe O'Brian, * * * speaking of and concerning the worthless check therefore passed upon said defendant, * * * by some person unknown to the plaintiff, said of and concerning plaintiff 'she is the girl that passed the check. I have known her for four years or I would not have cashed the check' "; when considered "by themselves, simply as such; in its own nature without reference to its relations" (Tucker v. Wallace, 90 Mont. 359-364, 3 P.(2d) 404, 405; Woolston v. Montana Free Press, 90 Mont. 299, 309, 310, 2 P.(2d) 1020; Burr v. Winnett Times Publishing Company, 80 Mont. 70, 75, 258 P. 242; Manley v. Harer, 73 Mont. 253, 256, 258, 235 P. 757; Bowman Remedy Co. v. Jensen Salsbery Laboratories (C.C.A.) 17 F.(2d) 255, 257, 258, 52 A.L.R. 1187; Ledlie v. Wallen, 17 Mont. 150, 42 P. 289; and Pollard v. Lyon, 91 U.S. 225, 23 L.Ed. 308); and construed according to their usual, popular, and natural meaning and common acceptation; that is, in the sense in which persons out of court and of ordinary intelligence would understand them (Daniel v. Moncure, 58 Mont. 193, 200, 190 P. 983; Burr v. Winnett Times Publishing Company, 80 Mont. 70, 75, 258 P. 242; Porak v. Sweitzer's, Inc., 87 Mont. 331, 340, 341, 287 P. 633; Campbell v. Post Publishing Company, 94 Mont. 12, 17, 18, 20 P.(2d) 1063); and viewed by the court as a stranger might look at it, without the aid of any special knowledge possessed by the parties concerned (Campbell v. Post Publishing Company, 94 Mont. 12, 18, 20 P.(2d) 1063; Woolston v. Montana Free Press, 90 Mont. 299, 310, 2 P.(2d) 1020), it is unreasonable to argue that the words used are susceptible of but one meaning, and that the opprobrious one (Campbell v. Post Publishing Company, 94 Mont. 12, 18, 20 P. (2d) 1063; Burr v. Winnett Times Publishing Company, 80 Mont. 70, 75, 258 P. 242; Manley v. Harer, 73 Mont. 253, 258, 259, 235 P. 757; Brown v. Independent Publishing Company, 48 Mont. 374, 380, 138 P. 258); i. e., that knowing the check to have been passed by her to be false, altered, forged, or counterfeited the plaintiff passed the same with a specific intent to prejudice, damage, or defraud some one within the meaning of and under the circumstances required by section 11355, Revised Codes of Montana 1921; or, that at the time she is said to have passed the check plaintiff knew that the apparent maker thereof was a nonexistent person or entity, and because thereof fictitious; and so knowing passed the same with intention to defraud some other person within the meaning of section 11361, Id.; or, that plaintiff knew at the time she is said to have passed the check that the maker thereof then had not sufficient funds in or credit with the bank or other depositary on which it was drawn for the payment of such check, and that she acted with specific intent to defraud within the meaning of section 11369, or that plaintiff knowingly and designedly made to the person injured one or more false representations of past or existing facts with the intent to defraud within the meaning of section 11410.

Neither can it reasonably be contended, when the words said to have been spoken of and concerning the plaintiff are so considered, construed, and viewed that the third party or parties present would necessarily conclude from them that the check said to have been passed by plaintiff was false, altered, forged, or counterfeited within the meaning of section 11355 of the Revised Codes of Montana 1921; or, that it purported to be a check for the payment of money or property of some bank, corporation, copartnership, government, or individual in existence, and that in fact there was no such bank, corporation, copartnership, government, or individual in existence within the meaning of section 11361, Id.; or, that she made to the person injured one or more false representations of past evidence or existing facts which he believed to be true and upon which he acted within the meaning of section, 11410, Id. Section 11987, Revised Codes of Montana 1921; State v. Brantingham, 66 Mont. 1, 11, 212 P. 499.

■ In addition, plaintiff by pleading the extrinsic circumstances she does plead in the second and third causes of action set out in her complaint herein, in effect, admits that the words said to have been spoken by defendant's agent of and concerning her, as set out therein, were not slanderous per se.

In Erick Bowman Remedy v. Jensen Salsbery Laboratories, 17 F.(2d) 255, 257, 52 A.L.R. 1187, the Circuit Court of Appeals for the Eighth Circuit said: "If the injurious character of the words appear, not from their face, in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous per se."

In Woolston v. Montana Free Press, 90 Mont. 299, 310, 2 P.(2d) 1020, 1021; and Campbell v. Post Publishing Company, 94 Mont. 12, 18, 20 P.(2d) 1063, the Supreme Court of the state of Montana stated the rule as follows: "The entire printed statements must be viewed by the court as a stranger might look at it, without the aid of special knowledge possessed by the parties concerned." This is necessarily so, for the term "per se" means, by itself; simply as such; in its own nature without reference to its relations. Woolston v. Montana Free Press, 90 Mont. 299, 309, 2 P.(2d) 1020; · Tucker v. Wallace, 90 Mont. 359, 364, 3 P.(2d) 404.

It necessarily follows that the words said to have been spoken by defendant's agents of and concerning plaintiff are not slanderous per se, and as no special damage is alleged each of the causes of action set out in the complaint herein is open to attack by general demurrer.

The result is that the demurrers to the first, second, and third causes of action set out in the complaint herein should be and they are hereby sustained.

Plaintiff is granted 10 days after written notice of these rulings in which to amend her complaint if so advised.