LIEBEL, Respondent, v. MONTGOMERY WARD & CO., INC., et al., Appellants.

(No. 7,605.)

(Submitted October 23, 1936.   Decided November 21, 1936.)

[62 Pac. (2d) 667.]

*Mr. T. J. Davis,* for Appellants, submitted a brief and argued the cause orally.

372

*Mr. N. A. Rotering* and *Mr. William B. Frame,* for Respondent, submitted a brief; *Mr. Rotering* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to recover damages for slander. The complaint alleges, in substance, that the plaintiff is a business woman holding a responsible position as stenographer in a law office, where one of the necessary qualifications is honesty, integrity and good credit; that plaintiff went to the place of business of the defendant company and applied for credit to purchase a gas stove, selected a stove, signed a conditional sales contract and a credit memoranda reference, paid $5 on the contract, and was advised that the stove would be delivered in the afternoon of the same day or in the forenoon of the following day; that, the stove not being delivered, plaintiff called to inquire as to the reason, and that the defendant Hickey, acting within the scope of her employment, falsely and loudly and in the presence of others uttered to the plaintiff the slanderous words complained of, and that the slanderous words were "contrived by defendants wickedly and maliciously with the intent to injure the plaintiff in her good name, fame and credit and to bring her into public contempt,

hatred, ridicule, obloquy and to cause her to be shunned and avoided; that defendants made such statements publicly for the purpose of injuring and hurting plaintiff in her business and occupation.''

The defendants' demurrer to the complaint was overruled and they were given 30 days to plead further. The answer denied all the material allegations of the complaint. The matter was heard by the court sitting with a jury. Plaintiff presented her evidence and rested, and thereupon the defendants moved for a nonsuit, which was denied. After the hearing was completed, defendants moved for a directed verdict, which was likewise denied.

Plaintiff in her prayer for relief asked for $2,500 actual and $3,500 exemplary damages. The jury returned a verdict in favor of the plaintiff and fixed her actual damages at $750, but allowed no exemplary damages. Judgment was entered in accordance with the verdict. Defendants' motion for a new trial was denied. The appeal is from the judgment.

Counsel for the defendants assigns twenty distinct specifications of error, advances numerous contentions and cites a multitude of authorities to support his arguments thereon. Counsel for the plaintiff likewise argue the matter at length, citing many authorities. We think, however, that the questions to be determined are: (1) Were the words alleged to have been uttered by the defendant Hickey slanderous *per se*? and (2) If such words were not slanderous *per se*, did plaintiff allege and prove special damages?

Plaintiff's testimony recounting the words constituting the alleged slander, after stating that she selected a certain stove at the Montgomery Ward & Co. store and was then referred to the office, is as follows: ''In the office they took the reference sheet and investigated my credit. I gave references. * * * After the contract was signed I then left the store. They said they would try to have the stove delivered that afternoon and if not they would have it out the next day in the forenoon which was Saturday. They said they would de-

liver it at the house, my house. Miss Hickey said so to me.
\* \* \* The next day the stove was not delivered before noon and I waited until in the afternoon, after 2 o'clock.
\* \* \* My sister-in-law and I went down there. Her name is Mrs. Larson. \* \* \* When we went in there about half-past 2 in the afternoon of February 9, 1935, there was several people in the store and I talked to Miss Irene Hickey who was connected with the defendant corporation—the defendant Miss Hickey. \* \* \* When I talked to her she was at the desk in the office of the defendant Montgomery Ward Company. I think I spoke first. I told her who I was and asked her why they had not delivered the stove. Miss Hickey made reply to me; she said 'Just wait a minute' and she reached for the report that she had, I presume it was the one I had signed. She didn't say anything more than 'Just a minute,' right then. I didn't say anything immediately just after she said 'Just a minute.' Miss Hickey was the first to speak after that. It was just long enough for her to get the report she has after she said 'Just a minute' that she spoke, and then she said 'Why your credit is no good, you don't pay your bills' she said 'You owe too many bills in town.' When she made that statement 'Your credit is no good' and the rest that I have testified to, I was standing just outside of the desk. The desk is just a desk and it is not closed in, and her desk is just over, just kind of a table; her desk is just back of that.

"There were several people around; there were some working in the store and there were some more in shopping, members of the public. Miss Hickey spoke very loud and insulting when she said 'Your credit is no good,' and it was so that the other people could hear. The statement she made first was 'Why your credit is no good' and then she said 'You don't pay your bills,' and she said 'You owe too many bills in town.' When Miss Hickey said that I said 'I don't think I owe anyone in town.' After I said that Miss Hickey said 'Oh yes you do; you have owed the Uncle's jewelry store a bill for over two years.' The Uncle's jewelry store is on West

Park, in the second block on the north side of the street, in Butte, Montana. I know Mr. Uncles. When Miss Hickey said to me 'Why you owe James Uncles a bill for over two years' I said 'Why I paid that bill over a year ago.' Then Miss Hickey said, 'That bill has not been paid.'

"I had business transactions with James Uncles prior to the 8th day of February, 1935. On the 9th day of February, 1935, there was not a bill outstanding against me at James Uncles. There had been a bill that I owed at James Uncles prior to the 8th day of February, 1935. That had been paid in March, 1934, and I have a receipt for it. * * * The last statements which I have testified were made by Miss Hickey were made in a very loud tone of voice. When Miss Hickey made the final statement 'That bill has not been paid' I asked her if they would send the stove up and she said 'No.' "

Later in her testimony the plaintiff stated that she asked that the contract be canceled, and still further along she testified: "I first met Irene Hickey Friday, February 7th when I went in the door and never saw her before. I again saw her on the 9th and those are the two times I ever had any conversation at all with Miss Hickey; neither of us girls had ever met and neither of us knew anything about the other that I know of."

Our statute says: "Slander is a false and unprivileged publication other than libel, which: * * * 3. Tends directly to injure him [a person] in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit." (Sec. 5691, Rev. Codes.) Plaintiff must find in these words the ground on which her right to recover is based. The plaintiff's occupation was not that of an office, profession, trade or business, and necessarily her right to recover must be shown by injury suffered in her

occupation as a stenographer, as that is the only occupation, for which it appears she was "peculiarly" fitted.

The text-books treat libel and slander under the double heading, and many of the established rules pertinent to the subjects are applicable to both, but there is a marked distinction between the two when it comes to a consideration of the facts and the application of the law. (36 C. J., p. 1146, sec. 3.) It is also true that in the law of libel and slander much which, if spoken, would not be actionable without the averment of extrinsic facts or the allegation and proof of special damages, when written or printed, is actionable *per se*. (17 R. C. L. 287, sec. 26.) It will also be noted that there is a distinction between plaintiffs who are merchants, traders or those engaged in a vocation wherein credit is especially vital, and those engaged in other occupations such as the plaintiff here. (*Porak* v. *Sweitzer's, Inc.,* 87 Mont. 331, 287 Pac. 633, 635; 17 R. C. L. 299; 36 C. J. 1170; *Estes* v. *Sterchi Brothers Stores,* 50 Ga. App. 619, 179 S. E. 222; *Stannard* v. *Wilcox & Gibbs Sewing Mach. Co.,* 118 Md. 151, 84 Atl. 335, 338, Ann. Cas. 1914B, 709, 42 L. R. A. (n. s.) 515; *Wrought Iron Range Co.* v. *Boltz,* 123 Miss. 550, 86 So. 354.)

Were the alleged defamatory words actionable *per se?* In view of the fact that no precise rule has been laid down that serves as an exact guide in determining when alleged words are slanderous and actionable *per se* and when they are not, the court is compelled to rely upon decisions in actions of a similar character to determine whether the facts in a particular case bring it within the cases held to be actionable *per se,* and in proceeding on such authority it is difficult to draw the line between many of the decisions, as it is frequently found that in actions where the facts are quite similar, the decisions are not in harmony.

We are impressed with the reasoning and the conclusions arrived at in the cases of *Stannard* v. *Wilcox & Gibbs Sewing Mach. Co.,* supra, and in the case of *Nichols* v. *Daily Reporter Co.,* 30 Utah, 74, 83 Pac. 573, 575, 117 Am. St. Rep. 796, 8

Ann. Cas. 841, 3 L. R. A. (n. s.) 339, where excerpts from numerous cases are recited, and from a careful study of such cases and many others of a similar nature, the difference between facts in a case of slander that are construed to be actionable *per se* and those where special damages must be alleged and proved, becomes fairly clear.

It has often been said that "the term *'per se'* means 'by itself, simply as such; in its own nature without reference to its relations,' and, to constitute libel (or slander) *per se*, the published statement of or concerning the plaintiff must be susceptible of but one meaning * * * and, therefore, a publication which requires innuendo to demonstrate wherein it is slanderous cannot be slanderous *per se*." (*Tucker* v. *Wallace*, 90 Mont. 359, 3 Pac. (2d) 404, 405.) From this general outline the courts must determine in each case whether certain words alleged to be slanderous *per se* are such in fact.

Words that have been held to be actionable *per se,* and to the contrary, in adjudicated cases lead to a clearer conception of the question than any definition we find in the books. In *Porak* v. *Sweitzer's, Inc.,* supra, this court said: "As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a writing containing the mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the purpose and effectual conduct of his business, owes a debt and refuses to pay or owes a debt which is long past due is not libelous *per se,* and does not render the author or publisher of such statement liable without proof of special damages," citing cases. The controversy in the *Porak Case* arose over defendant's publishing in a delinquent debtor's list the name of the plaintiff, who was a bookkeeper.

In the case of *Armstrong* v. *Sun Printing & Publishing Assn.,* 137 App. Div. 828, 122 N. Y. Supp. 531, it was said: "In order that words shall be libelous *per se* as disparaging a person in his trade or business, they must have been spoken of plaintiff in relation thereto, and be of such a character as

would prejudice him by impeaching either his skill or knowledge.''

''Words, spoken and published of another, are not, ordinarily, slanderous and actionable *per se* unless they impute to the person of whom spoken the commission of a crime, or subject him to public ridicule, ignominy or disgrace.'' (*Davis v. Meyer*, 115 Neb. 251, 212 N. W. 435, 50 A. L. R. 1410.)

In the case of *Stannard* v. *Wilcox & Gibbs Sewing Mach. Co.*, supra, Stannard was manager of the Baltimore office of a New York concern. Stannard's wife purchased a sewing machine from the defendant for which she had not fully paid. The defendant corporation wrote the home office of Stannard's employer in New York, stating the facts and suggesting that it was assumed that the New York office would be interested in the manner their employee took care of his bills, and stating that if the account was not speedily settled, it would be referred to its attorneys. Stannard sued for libel. In announcing its decision in favor of the defendant, the court said: ''The statements in regard to him [Stannard] in no way related to the manner of his performance of his duties as manager of the Holmes Electric Protective Company, or charged him with being unfit for the proper performance of them; nor did he lose his position because of the letter in question, in which case he would have sustained special damage. Under these conditions, and applying the rule of law already stated, the letter cannot be regarded as actionable *per se*, and the trial court committed no error in sustaining the demurrer.''

In *Nichols* v. *Daily Reporter Co.*, supra, it was said: ''To publish of one that he was indebted for a bill, but would not pay it, unless a certain sum was 'knocked off,' and that it was a 'dirty Jew trick to try to beat the house,' '' was held not libelous *per se*.

A letter written by a landlord to a mortgagee of his tenant's chattels located on the premises, that defendant had made no arrangements for the rent and that he would thereafter look

to the mortgagee for the rent, is not libelous *per se*. (*Bush* v. *McMann*, 12 Colo. App. 504, 55 Pac. 956.)

A statement, in the presence of others, that "all I want you to do is to pay your honest debts" was held not slanderous. (*Hamilton* v. *McKenna*, 95 Kan. 207, 147 Pac. 1126, 1128, L. R. A. 1915E, 455.)

A statement that the plaintiff had been made defendant in a criminal action was held not to be libelous *per se* in *Ruble* v. *Kirkwood*, 125 Or. 316, 266 Pac. 252.

We are of the opinion that the slanderous words alleged to have been uttered by the defendant Hickey in the action at bar were not, as a matter of law, and by themselves considered, actionable *per se*. Such words in no manner reflect upon plaintiff as a stenographer. Such being our conclusion, it then becomes necessary to determine whether plaintiff proved any special damages or not.

In suits for slander, if the words are not actionable *per se,* special damages must be alleged and proved. (*Brown* v. *Independent Publishing Co.*, 48 Mont. 374, 138 Pac. 258; *Campbell* v. *Post Publishing Co.*, 94 Mont. 12, 13, 20 Pac. (2d) 1063; *Burr* v. *Winnett Times Publishing Co.*, 80 Mont. 70, 258 Pac. 242; *Manley* v. *Harer,* 73 Mont. 253, 235 Pac. 757.)

Defendants contend that the complaint does not allege special damages, but we do not consider that question of importance here, unless the evidence establishes the fact that special damages were sustained. Did the plaintiff prove special damages? The testimony shows that the plaintiff and her sister-in-law, Mrs. Dona Larson, were present when the alleged slanderous words were uttered, and in addition the defendant Hickey and Evelyn Segar, an employee of the defendant company. The testimony as to the presence of these parties is not in conflict. The plaintiff and her witnesses contend, and defendants deny, that Mrs. Kizzie Simenoff, another witness for plaintiff, was present. Defendants contend, and plaintiff and her witnesses deny, that O. J. Peterson, manager of the defendant company, was present "sitting about six feet from

the defendant Hickey," when it is alleged the slander was uttered. Plaintiff testified that Peterson was in the front part of the store. As to the presence of Mrs. Simenoff and Peterson, the testimony is in positive and sharp conflict. The testimony is also in sharp conflict as to the utterance of the slanderous words, the witnesses for the defendants testifying that no such words were uttered, and the testimony of the witnesses for the plaintiff being to the contrary. Plaintiff testified that other persons in the store heard the slanderous utterance, but named only those above mentioned.

The only testimony in the record given in support of special damages is to the effect that plaintiff states she is quite sure that "Scotty" Frame, the attorney by whom plaintiff had been employed for some years, was led to discharge her because of the slanderous words alleged to have been uttered by the defendant Hickey at the time mentioned; that an application which she had at the Butte Business College for a position was without results for the same reason, and plaintiff also believed her application to take the civil service examination was not answered for the same reason.

The rule laid down in *Tucker* v. *Wallace,* supra, disposes of this contention as injury, if any, that the plaintiff suffered by reason of the alleged slanderous utterance, must have come to her by reason of its being heard by her sister-in-law, Mrs. Larson, or by Mrs. Simenoff. Mrs. Simenoff testified rather strongly about her friendship for the plaintiff, and obviously would not permit any such utterances to lead her to do anything to injure the plaintiff; and, furthermore, it does not appear that Mrs. Simenoff was in need of the services of a stenographer or had ever employed one.

In *Tucker* v. *Wallace,* supra, quoting from Odgers on Libel and Slander, sixth edition, 472, it was said: "If I myself tell the story to your employer, who thereupon dismisses you, you have an action against me; but if I only tell it to your friends and relations and no pecuniary damage ensues from my communication to any one, then no action lies against me, although

the story is sure to get round to your master sooner or later. The man whose lips actually utter the slander to your master, is the only person who can be made defendant; for it is his publication alone which is actionable as causing special damage. * * * It would seem, therefore, that, in case of ██ slander, it is important to show where the statement was made and that the person to whom it was made was in a position to injure plaintiff's business." It was also said in that case that "liability for slander attaches only to the initial publication, and the offender is not liable for its repetition, unless he requests or intends its repetition.

There is nothing in the record to show that defendants intended the slander should be repeated, nor is it reasonable to assume that its repetition would in any way serve or be of benefit to the defendants, or that they desired it to be repeated. It is obvious that if the slander were repeated to plaintiff's employer, or any of the other persons mentioned by plaintiff, where the repetition is assumed by plaintiff to have been injurious to her, the repetition must have been made by the plaintiff or someone for whom the defendants were in no way responsible.

In order to show special damages in this action, we think it was necessary that the plaintiff show that the alleged slander injured her in her occupation as a stenographer. In the case of *Galloway* v. *Cox*, 172 S. C. 101, 172 S. E. 761, defendant went to the plaintiff, to whom he had rented a woodyard, to collect a small rental. The plaintiff did not have the money to pay the rental and so informed the defendant, whereupon the defendant said, "Galloway, I have found you dishonest. I have found you out and that is enough for me." The court held that "the complaint must state facts which show, if proven to be true, that they will injure the plaintiff in his business. * * * 'The rule is that in order to render language concerning one in a specific character or relation actionable it must touch him in that specific character or relation; that is, the words must have such a close reference to such

relation or character that it can be said that they are defamatory by means of an imputation upon one in that character distinctly from and independently of being an imputation upon him as an individual,' " citing 36 C. J. 1182.

There is nothing in the record to indicate the plaintiff's ability as a stenographer was brought in question, and a statement that she did not pay her bills promptly, whether true or not, raises no question about her ability as a stenographer. Plaintiff was not injured in the occupation out of which she earned her livelihood. The words uttered were not heard by plaintiff's employer or by anyone else who it has been shown was in a position to injure plaintiff.

The complaint, as a matter of law, did not state a cause of action, and the cause is therefore remanded, with instruction to the trial court to enter a judgment of dismissal.

ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS and MR. JUSTICE MATTHEWS, being absent, did not hear the argument and take no part in the foregoing decision.